Argued and submitted December 11, 2003, affirmed February 16, 2005

In the Matter of the Compensation of
James W. Jordan, Claimant.

James W. JORDAN,
*Petitioner,*

*v.*

SAIF CORPORATION,
*Respondent.*

00-0051M; A116152

106 P3d 663

Donald M. Hooton argued the cause and filed the briefs for petitioner.

Alice M. Bartelt, Appellate Counsel, argued the cause and filed the brief for respondent.

Before Edmonds, Presiding Judge, and Schuman, Judge, and Deits, Judge pro tempore.

DEITS, J. pro tempore.

**DEITS, J., pro tempore**

Claimant seeks review of an own motion order of the Workers' Compensation Board authorizing a suspension of claimant's temporary total disability benefits for a three-month period during which claimant allegedly failed to attend a medical examination or participate in prescribed physical therapy. Claimant contends that the board lacked authority to suspend his benefits. We affirm.

In 1986, claimant injured both knees while working for his former employer. The claim was closed in 1987, and claimant's aggravation rights expired on May 21, 1992. In February 2000, at claimant's request, the board, on its own motion, ordered that claimant's claim be reopened for bilateral anterior cruciate ligament (ACL) reconstructive surgery and payment of temporary total disability beginning on the date of the surgery. Claimant had surgery on both knees in February 2000. On October 11, 2000, claimant's treating physician, Dr. Edelson, determined that the left knee was medically stationary. He prescribed eight physical therapy sessions for the right knee beginning October 27, 2000. Claimant attended his initial appointment on October 27 and appointments on November 2, 3, and 10, 2000.

On November 12, 2000, claimant underwent emergency arthroscopic surgery on his left knee to remedy an acute infection caused by intravenous drug use. He also began a treatment plan for narcotic withdrawal. Claimant missed a scheduled November 28 physical therapy appointment and failed to attend an examination with Edelson on December 19.

By a letter dated January 5, 2001, Edelson reported to SAIF that, if claimant did not attend a rescheduled appointment, he would consider claimant's right knee medically stationary as of December 19, 2000, the date of the missed appointment. Also on January 5, 2001, SAIF notified claimant that it had rescheduled an appointment with Edelson for February 13, 2001, and advised him that a failure to attend the examination could result in a suspension of his temporary disability benefits. Claimant attended the examination. Edelson opined that claimant had been doing well

with physical therapy until his hospitalization for the left knee and was not yet medically stationary. Edelson recommended four more weeks of physical therapy for bilateral quadriceps weakness.

Claimant attended his first physical therapy appointment on February 22, but then rescheduled a February 28 appointment to March 1 and missed the March 1 appointment. On March 8, SAIF notified claimant that he had an appointment with Edelson on April 3 and that, if he missed that appointment, he would face suspension of temporary disability benefits. On March 15, SAIF requested that the board, under the authority of OAR 438-012-0035(5), suspend claimant's temporary disability benefits retroactive to December 19, 2000, "until he fully and actively participates in his own recovery."

On March 20, claimant attended a physical therapy session and reported that he had missed physical therapy sessions because he had been out of town. He also attended sessions on March 23, March 26, and April 2. On April 3, claimant saw Edelson, who noted that claimant had experienced increased swelling and pain in the right knee and was not medically stationary. He requested an MRI to rule out the possibility of a "meniscal tear vs osteochondral defect" in the right knee. The MRI was performed on April 5, 2001, showing marked chondromalacia of the medial compartment. On April 10, claimant attended a physical therapy session. The therapist noted in claimant's chart that claimant had reported that his doctor had told him that he would have yet another MRI and might need further surgery. Physical therapy was discontinued.

In an own motion order of May 31, 2001, which the board readopted in an order on reconsideration of September 27, 2001, the board "suspended" claimant's temporary total disability benefits from December 19, 2000 to March 20, 2001, citing as authority its order in *Glen A. Carr*, 52 Van Natta 1405 (2000), and OAR 438-012-0035(5)[1] and stating

---

[1] OAR 438-012-0035(5) provides, in part:

"If the own motion insurer believes that temporary disability compensation should be suspended for any reason, the insurer may make a written request for such suspension. * * * The insurer shall not suspend compensation under this section without prior written authorization by the Board."

that claimant had not shown a "valid and compelling reason" for failing to attend a medical examination and failing to participate in prescribed treatment for his compensable knee conditions. The board reasoned that "requiring workers whose claims have been reopened under ORS 656.278 to follow their doctors' instructions also promotes the legislative objective of restoring injured workers physically and economically to a self-sufficient status as soon as possible and to the greatest extent practicable," consistently with ORS 656.012(2)(c).[2]

■     On review in this court, claimant argues that the board erred in suspending his temporary total disability benefits. It is claimant's position that, although the statutes governing the board's own motion authority give the board authority to allow temporary total disability benefits in the own motion context, the statutes do not authorize the board, acting in its own motion capacity, to suspend such benefits once it has allowed them. Claimant argues that the board's rule, OAR 438-012-0035(5), authorizing the board to suspend those benefits and setting out a procedure for doing so, is invalid because it exceeds the board's authority. In claimant's view, the suspension of temporary total disability benefits is governed by ORS 656.325, the statute that applies generally to the suspension of such benefits. Under that statute, only the Director of the Department of Consumer and Business Services (director) may consider a request for the suspension or reduction of temporary total disability benefits. Because here, the director did not consider the suspension of benefits, claimant asserts that the suspension of his benefits was invalid.

This case presents a question of statutory construction, which we analyze under the template of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). ORS 656.278 (1999)[3] is the source of the board's own motion

---

[2] ORS 656.012(2)(c) states that an objective of the workers' compensation law is "[t]o restore the injured worker physically and economically to a self-sufficient status in and expeditious manner and to the greatest extent practicable."

[3] The statute was overruled by the legislature in 2001. Oregon Law 2001, ch 865, § 11. At the relevant time, ORS 656.278 (1999) provided, as pertinent:

"(1) Except as provided in subsection (6) of this section, the power and jurisdiction of the Workers' Compensation Board shall be continuing, and it

jurisdiction. For those claims for which the five-year aggravation period has passed and there is a worsening of a compensable injury requiring either inpatient or outpatient surgery or other treatment requiring hospitalization, the board has "continuing" jurisdiction and may, "from time to time modify, change or terminate" former findings, orders or awards if "in its opinion such action is justified." Although the scope of the board's own motion authority has changed throughout the years, a general provision for own motion authority has been in existence since the adoption of the workers' compensation law in 1913, and the board's—or before 1965, the "State Industrial Accident Commission's"— "continuing jurisdiction" over claims has been a part of Oregon's workers' compensation laws since 1917. *See Holmes v. State Ind. Acc. Com.*, 227 Or 562, 362 P2d 371 (1961); *Verban v. State Ind. Acc. Com.*, 168 Or 394, 123 P2d 988 (1942); *Chebot v. State Industrial Acc. Commission*, 106 Or 660, 212 P 792 (1923). For the claims over which it has continuing jurisdiction, the board has authority under ORS 656.278 (1999) to "authorize the payment of temporary disability compensation from the time the worker is actually hospitalized or undergoes outpatient surgery until the worker's condition becomes medically stationary, as determined by the board[.]" Other than as described in ORS 656.278, there are few other references in ORS chapter 656 to the board's own motion jurisdiction.

The board, however, has been given authority by the legislature in ORS 656.726(5) to adopt rules that "are reasonably required in the performance of its duties, including but

may, upon its own motion, from time to time modify, change or terminate former findings, orders or awards if in its opinion such action is justified in those cases in which:

"(a) There is a worsening of a compensable injury that requires either inpatient or outpatient surgery or other treatment requiring hospitalization. In such cases, the board may authorize the payment of temporary disability compensation from the time the worker is actually hospitalized or undergoes outpatient surgery until the worker's condition becomes medically stationary, as determined by the board[.]

"* * * * *

"(4) The claimant has no right to appeal any order or award made by the board on its own motion, except when the order diminishes or terminates a former award. The employer may appeal from an order which increases the award."

not limited to rules of practice and procedure in connection with hearing and review proceedings and exercising its authority under ORS 656.278." As noted above, pursuant to that authority, the board promulgated OAR 438-012-0035, implementing its authority to award temporary disability on claims within its own motion jurisdiction. At the relevant time in this case, the rule provided, as pertinent:

"(1) The Board shall order the payment of temporary disability compensation from the date the claimant is actually hospitalized or undergoes outpatient surgery * * *[.]

"* * * * *

"(3) The insurer shall make the first payment of temporary disability within 14 days from the date of an order of the Board reopening the claim.

"(4) Temporary disability compensation shall be paid until one of the following events first occurs:

"(a) The claim is closed pursuant to OAR 438-012-0055;

"(b) A claim disposition agreement is submitted to the Board pursuant to ORS 656.236(1), unless the claim disposition agreement provides for the continued payment of temporary disability compensation; or

"(c) Termination of such benefits is authorized by the terms of ORS 656.268(3)(a) through (c).

"(5) If the own motion insurer believes that temporary disability compensation should be suspended for any reason, the insurer may make a written request for such suspension. * * * The insurer shall not suspend compensation under this section without prior written authorization by the Board."

OAR 438-012-0035 (1997).[4]

---

[4] At the time relevant to this case, the 1995 version of ORS 656.268(3) provided:

"Temporary total disability benefits shall continue until whichever of the following events first occurs:

"(a) The worker returns to regular or modified employment;

"(b) The attending physician advised the worker and documents in writing that the worker is released to return to regular employment;

"(c) The attending physician advises the worker and documents in writing that the worker is released to return to modified employment, such

As claimant points out, however, in addition to the specific own motion statutes, the Workers' Compensation Act also includes provisions that generally govern the suspension of temporary disability benefits in certain circumstances. ORS 656.325 (1999)[5] provides, as relevant:

"(2)  *For any period of time during which any worker* commits insanitary or injurious practices which tend to either imperil or retard recovery of the worker, or refuses to submit to such medical or surgical treatment as is reasonably essential to promote recovery, or fails to participate in a program of physical rehabilitation, *the right of the worker to compensation shall be suspended with the consent of the director and no payment shall be made for such period. The period during which such worker would otherwise be entitled to compensation may be reduced with the consent of the director to the extent as the disability has been increased by such refusal.*

"* * * * *

"(4)  When the employer of an injured worker, or the employer's insurer determines that the injured worker has failed to follow medical advice from the attending physician or has failed to participate in or complete physical restoration or vocational rehabilitation programs prescribed for the worker pursuant to this chapter, *the employer or insurer may petition the director for a reduction of any benefits awarded the worker. Notwithstanding any other provision of this chapter, if the director finds that the worker has failed to accept treatment as provided in this subsection, the director may reduce any benefits awarded the worker by such amount as the director considers appropriate.*"

(Emphasis added.)

Under ORS 656.325, there are two remedies available to an insurer when a worker fails to follow through with recommended medical treatment. Subsection (2) authorizes a

---

employment is offered in writing to the worker and the worker fails to begin such employment; or

"(d) Any other event that causes temporary disability benefits to be lawfully suspended, withheld or terminated under ORS 656.262(4) or other provisions of this chapter."

[5] We note that ORS 656.325 was amended in 2003, but the amendments have no bearing on this case. Or Laws 2003, ch 811, § 13.

suspension or reduction in benefits. Subsection (4) also provides for a reduction in benefits. Both actions require the approval of the director.[6] Claimant contends that any request for the suspension of benefits due to a failure to submit to medical treatment or physical therapy, even the suspension of an award made by the board in its own motion capacity, must be brought before the director as provided in ORS 656.325.

The issue that the board decided and that we must resolve is whether the board has authority in its own motion capacity to suspend temporary total disability benefits or whether the suspension of benefits is governed by the provisions of ORS 656.325, even though the temporary total disability benefits were allowed under the board's own motion jurisdiction.

SAIF asserts that ORS 656.325 has no application to own motion claims. In SAIF's view, the rules and procedures set forth in ORS 656.325 apply only to the processing of claims by the department, as reviewed by the board, within the five-year aggravation period and not to the board in its own motion capacity. SAIF reasons that under ORS 656.278 and ORS 656.726(2), only the board, within its own motion jurisdiction, has authority regarding claims that are beyond the five-year aggravation period. SAIF contends that, because own motion temporary disability benefits are available only under the board's own motion authority under ORS 656.278, and not "by way of the statutes," only the board has "jurisdiction" to suspend temporary total disability benefits. It follows, SAIF contends, that statutory provisions for the termination or suspension of benefits that apply to claims generally do not apply to claims within the board's own motion unless the board specifically adopts such provisions in the own motion context. In SAIF's view, if the legislature had intended the procedures of ORS 656.325 to apply to the suspension of temporary disability compensation in own motion

---

[6] We note that under ORS 656.262(14), the director is also authorized to suspend a worker's benefits if the director finds that the worker has failed to cooperate reasonably in the investigation of an initial claim or an aggravation claim. Under ORS 656.262(4), the insurer, with appropriate notice, may unilaterally suspend temporary disability benefits if the worker misses a medical appointment and fails to appear at a rescheduled medical appointment.

claims, it could easily have so provided. Further, SAIF contends that under ORS 656.278 and ORS 656.726, the board had authority to adopt OAR 438-012-0035(5), which specifies the procedures for the suspension of own motion benefits for temporary disability.

In claimant's view, the board does not have the authority to suspend temporary total benefits that it has granted in the own motion context. First, claimant notes that ORS 656.278 permits the board only to authorize *payment* of temporary disability benefits and that there is no explicit authority given to the board to suspend such benefits. Claimant contends, further, that ORS 656.325(2) and (4) apply to a suspension of benefits in own motion claims because nothing in the text of those statutory provisions explicitly makes them inapplicable. Claimant points out that the texts of ORS 656.325(2) and (4) do not include any phrase or words limiting their application to claims that fall within the five-year aggravation period. Claimant relies on the language of ORS 656.325(2) in support of the assertion that the director's authority over the suspension of temporary disability benefits extends to *all periods* during which a claimant is receiving benefits for temporary disability. ORS 656.325(2) applies "[*f*]*or any period of time during which any worker* * * * refuses to submit to such medical or surgical treatment as is reasonably essential to promote recovery, or fails to participate in a program of physical rehabilitation." (Emphasis added.) Claimant also points out that the procedures of ORS 656.325(4) apply "[n]otwithstanding any other provision of [ORS chapter 656]." Claimant contends that, although under ORS 656.325, the board has authority to review the director's decision to suspend benefits, the board itself has no initial authority under any provision of ORS chapter 656 to consider initial requests for the suspension of benefits. Further, claimant asserts, there is no textual or contextual reason why the provisions of ORS 656.325(2) and (4), including the provisions for appeal stated in ORS 656.325(6), cannot coexist with the board's own motion jurisdiction for the limited purpose of resolving disputes concerning the suspension of temporary disability benefits.

As noted above, the board concluded, in its own motion reconsideration order, that the suspension of temporary total disability benefits that had been allowed in own

motion jurisdiction was not governed by ORS 656.325. Rather, the board held that the suspension of such benefits was governed by OAR 438-012-0035(5), the rule adopted pursuant to ORS 656.726(5). As the board explained,

"ORS 656.325(2) pertains to the authority of the carrier to suspend compensation 'with the consent of the director.' Typically, prior to the expiration of a claimant's aggravation rights, the source of such compensation arises from an initial or aggravation claim. In contrast, the source of compensation arising from temporary disability awarded under an Own Motion claim is the Board under ORS 656.278. Thus, because the temporary disability award stems from our Own Motion capacity under ORS 656.278, we are likewise authorized to implement a 'suspension' procedure for temporary disability arising out of ORS 656.278(1)(a). *See James W. Jordan,* 53 Van Natta at 728 (our original order) (our authority to suspend in OAR 438-012-0035(5) is consistent with the statutory scheme for workers whose aggravation rights have not expired; *i.e.,* ORS 656.325(2)). In other words, if the Board can authorize temporary disability under ORS 656.278(1), it can also suspend a claimant's temporary disability. Therefore, adoption of OAR 438-012-0035(5) is within Board authority."

(Footnote omitted.)

After considering the text and context of the pertinent statutes, we agree with the board that it does have authority to suspend temporary total disability benefits allowed under its own motion jurisdiction. As the board explained, in contrast to an award of benefits arising under an initial claim or an aggravation claim, the authority to make such an award in the board's own motion jurisdiction lies solely with the board. Significantly, ORS 656.278(1) gives the board authority "upon its own motion, from time to time [to] modify, change or terminate former findings, orders or awards." ORS 656.726(5) also specifically gives the board the authority to adopt all rules "reasonably required in the performance of its duties, including but not limited to rules of practice and procedure in connection with hearing and review proceedings and exercising its authority under ORS 656.278." It would make no sense for the legislature to have created a procedure for allowing temporary total disability benefits in the own motion context without also giving the board authority to suspend such benefits if necessary. That is

particularly so when the legislature gave the board authority to adopt rules establishing reasonable procedures for carrying out its own motion authority. Had the legislature intended that the board not have authority, in its own motion jurisdiction, to suspend benefits, it could easily have so provided. In our view, the text and context of ORS 656.278 contemplate that authority over granting and suspending temporary total disability in the own motion context belongs to the board. Further, nothing in the text or context of ORS 656.325, which governs the suspension of temporary disability benefits in the context of an initial and aggravation claim, specifically provides that the procedures of that statute apply to the suspension of benefits awarded in own motion jurisdiction.

Claimant argues that our holding in *Edward Hines Lumber Co. v. Kephart*, 81 Or App 43, 724 P2d 837 (1986), supports his view that ORS 656.325 applies. In *Kephart*, the board awarded the claimant permanent total disability under its own motion jurisdiction. The employer sought judicial review, arguing that ORS 656.278 was an unconstitutional delegation of legislative authority and that there was no "rule or standard" to guide the board in its exercise of discretion under the statute. This court held that the statute was constitutional, explaining:

> "The purpose of the Workers' Compensation Act is to provide prompt compensation to injured workers. In addition,
>
>> " '[o]ne express purpose of [ORS 656.278] is to provide for the adjustment of compensation from time to time as the workman's disability increases or diminishes.' *Buell v. S.I.A.C.*, 238 Or 492, 497, 395 P2d 442 (1964).
>
> "Own motion jurisdiction only provides the mechanism for adjustments. It is a part of the Workers' Compensation Act and with the other provisions of the act, provides rules and standards to guide the board in the exercise of its discretion. The statute is constitutional."

81 Or App at 46.

As noted in *Kephart*, we stated that own motion jurisdiction "only provides the mechanism for adjustments" in compensation. We continue to believe that and also adhere

to our view that the other provisions of the Workers' Compensation Act providing standards and rules should *guide* the board in exercising its own motion jurisdiction. *See Wausau Ins. v. Morris,* 103 Or App 270, 796 P2d 1243 (1990) (a claimant is entitled to benefits for temporary total disability on the board's own motion only if the claimant otherwise qualifies for those benefits under the relevant statutory provisions). The board has, in fact, adopted numerous procedures for claims within its own motion jurisdiction that are parallel to the statutory procedures for workers whose aggravation rights have not yet expired. *See, e.g., Michael P. Hannen,* 55 Van Natta 1508, 1515 (2003) ("[w]e are mindful of the objective to adhere when possible to standard claim processing concepts regarding Own Motion claims"); *Rodney Sullivan,* 53 Van Natta 7, 8, (2002) ("Consistent with the *Kephart* principle, the Board does utilize most claim processing standards and rules contained in the statutes when it reviews issues such as the timely payment of temporary disability compensation, (*Christopher L. Camara,* 50 Van Natta (1998)), the calculation of temporary total and temporary partial disability compensation (*Ed Gibson,* 50 Van Natta 832 (1998)), and premature claim closure (*Edward D. Riggs,* 52 Van Natta 93 (2000)).")). Indeed, the board views OAR 438-012-0035(5) as a provision "parallel" to ORS 656.325(2) for own motion claims, and "reasonably required" as a necessary corollary to the board's authority to grant temporary disability benefits in own motion. ORS 656.726(5). For the reasons discussed, we conclude that the board's adoption of OAR 438-012-0035(5), providing specific procedures for the suspension of benefits allowed in own motion jurisdiction, is not inconsistent with *Kephart* and was within the board's authority.

■    In his second assignment of error, claimant argues that the board erred in finding that claimant failed to offer a "reasonable" explanation for missing the follow-up appointment with his attending physician and for missing several physical therapy appointments. Claimant contends that that finding by the board reverses the proper burden of proof and that it was SAIF's burden to demonstrate that claimant's failure to obtain treatment was unreasonable. Further, claimant argues that SAIF had the burden of proving that an increase in temporary disability occurred as a result of claimant's failure to make the appointments. Claimant argues

that the board's finding that claimant would have been medically stationary on December 19, 2000, if he had not missed the appointments, is not supported by substantial evidence.

■■ We conclude that the board did not err in its conclusion that claimant acted unreasonably in not attending the appointments. In its order of May 31, 2001, the board discussed in detail claimant's justifications for not attending the medical and physical therapy appointments and held that it did not "find a valid compelling reason that prevented claimant from following his treating physician's instructions." We also hold that the board did not impermissibly shift the burden of proof and that its decision is supported by substantial evidence and substantial reason. Finally, assuming that OAR 438-012-0035(5) does require a finding of an increased disability as a prerequisite to the suspension of temporary total disability benefits, we hold that the board's finding that claimant's period of disability was lengthened by this failure to cooperate with medical treatment is supported by substantial evidence in the record. For all of the above reasons, the board did not err in suspending claimant's benefits.

Affirmed.