Argued and submitted March 2, decision of Court of Appeals reversed;
order of Workers' Compensation Board reversed, and case remanded to
Workers' Compensation Board for further proceedings August 30, 2007

In the Matter of the Compensation of
James W. Jordan, Claimant.

James W. JORDAN,
*Petitioner on Review,*

*v.*

SAIF CORPORATION,
*Respondent on Review.*

(Agency No. 00-0051M; CA A116152; SC S53844)

167 P3d 451

Donald M. Hooton, Beaverton, argued the cause for petitioner on review.

Alice M. Bartelt, SAIF Corporation, Salem, argued the cause for respondent on review.

Before De Muniz, Chief Justice, and Gillette, Durham, Balmer, Kistler, and Walters, Justices.**

DE MUNIZ, C. J.

** Linder, J., did not participate in the consideration or decision of this case.

## DE MUNIZ, C. J.

This case concerns the scope of the Workers' Compensation Board's (board) power under its "own motion" authority, pursuant to ORS 656.278. Specifically, we must determine whether the board's own-motion authority includes the power to suspend temporary disability payments when a claimant fails to comply with the physical therapy recommendations of his treating physician. Because the own-motion statutory provision does not explicitly list suspension among the powers granted to the board, and because another provision of the workers' compensation scheme governs suspension specifically, we conclude that the board does not have the authority under ORS 656.278 to suspend a claimant's temporary disability payments for failure to cooperate with physical therapy recommendations.

■      Before we set forth the factual background, we begin by outlining the statutory scheme in some detail. The workers' compensation scheme includes three phases:

> "The first phase begins when the worker is injured and initiates a claim. *See* ORS 656.262-656.270 (describing procedures for asserting claims for compensation for workplace injuries and for closure of claims). The second phase is the aggravation period, during which the worker may seek additional benefits for 'worsening conditions' resulting from the original injury during a five-year period after the injury. *See* ORS 656.273 (describing aggravation benefits and providing that claim for aggravation must be filed within five years). The third phase is known as own-motion authority, pursuant to which the board may reconsider and adjust an earlier award, even after the five-year aggravation period has ended."

*Dougan v. SAIF*, 339 Or 1, 4, 115 P3d 242 (2005). This case concerns the third phase, the board's own-motion authority. ORS 656.278 (1999),[1] which governed the board's own-motion jurisdiction in this case, provided, in part:

---

[1] Unless otherwise noted, we cite to the 1999 version of the applicable sections of the workers' compensation law, because that version governs the issues in this case.

"(1) Except as provided in subsection (6) of this section, the power and jurisdiction of the Workers' Compensation Board shall be continuing, and it may, upon its own motion, from time to time *modify, change or terminate former findings, orders or awards* if in its opinion such action is justified in those cases in which:

"(a)  There is a worsening of a compensable injury that requires either inpatient or outpatient surgery or other treatment requiring hospitalization. In such cases, *the board may authorize the payment of temporary disability compensation* from the time the worker is actually hospitalized or undergoes outpatient surgery until the worker's condition becomes medically stationary, as determined by the board; or

"(b)  The date of injury is earlier than January 1, 1966. In such cases, in addition to the payment of temporary disability compensation, the board may authorize payment of medical benefits."[2]

----

[2] In 2005, the legislature amended ORS 656.278(1), which now states:

"Except as provided in subsection (7) of this section, the power and jurisdiction of the Workers' Compensation Board shall be continuing, and it may, upon its own motion, from time to time modify, change or terminate former findings, orders or awards if in its opinion such action is justified in those cases in which:

"(a) There is a worsening of a compensable injury that results in the inability of the worker to work and requires hospitalization or inpatient or outpatient surgery, or other curative treatment prescribed in lieu of hospitalization that is necessary to enable the injured worker to return to work. In such cases, the payment of temporary disability compensation in accordance with ORS 656.210, 656.212(2) and 656.262(4) may be provided from the time the attending physician authorizes temporary disability compensation for the hospitalization, surgery or other curative treatment until the worker's condition becomes medically stationary;

"(b) The worker submits and obtains acceptance of a claim for a compensable new medical condition or an omitted medical condition pursuant to ORS 656.267 and the claim is initiated after the rights under ORS 656.273 have expired. In such cases, the payment of temporary disability compensation in accordance with the provisions of ORS 656.210, 656.212(2), and 656.262(4) may be provided from the time the attending physician authorizes temporary disability compensation for the hospitalization, surgery or other curative treatment until the worker's condition becomes medically stationary, and the payment of permanent disability benefits may be provided after application of the standards for the evaluation and determination of disability as may be adopted by the Director of the Department of Consumer and Business Services pursuant to ORS 656.726; or

"(c) The date of injury is earlier than January 1, 1966. In such cases, in addition to the payment of temporary disability compensation, the payment of medical benefits may be provided."

(Emphases added.) That statute does not use the word "suspend" in describing the board's authority with respect to temporary disability benefits; instead, ORS 656.278(1) permits the board to "modify, change, or terminate" former findings or awards and to "authorize the payment of temporary disability benefits." Despite the lack of explicit suspension authority in ORS 656.278(1), the board promulgated a rule to govern the suspension of benefits, pursuant to the rulemaking authority outlined in ORS 656.726(5) (1999).[3] That rule provided, in part:

> "If the own motion insurer believes that temporary disability compensation should be suspended for any reason, the insurer may make a written request for such suspension. * * * The insurer shall not suspend compensation under this section without prior written authorization by the Board."

OAR 438-012-0035(5) (1997).[4] Under the board's rule, therefore, the insurer must request the board's authorization to suspend benefits awarded pursuant to the board's own-motion authority.

---

[3] ORS 656.726(5) (1999) provided, in part:

"The board may make and declare all rules which are reasonably required in the performance of its duties, including but not limited to rules of practice and procedure in connection with hearing and review proceedings and exercising its authority under ORS 656.278."

[4] That rule has also been amended. OAR 438-012-0035(6) (2005) now provides:

"(a) An Own Motion insurer may unilaterally suspend compensation under the circumstances provided in ORS 656.262(4)(e), (4)(h), and (4)(i). If the Own Motion insurer believes that temporary disability compensation should be suspended for any reason other than those provided in ORS 656.262(4)(e), (4)(h), and (4)(i), the insurer may make a written request to the Board for such suspension. This request shall:

"(A) State the reasons the insurer is requesting that the Board suspend the claimant's temporary disability compensation;

"(B) Include copies of supporting documentation; and

"(C) Be mailed to the claimant and the claimant's attorney, if any, by certified or registered mail.

"(b) Unless an extension is granted by the Board, claimant or claimant's attorney shall have 14 days to respond to the Board in writing to the request.

"(c) Unless an extension is granted by the Board, the insurer shall have 14 days to reply in writing to claimant's response.

"(d) The insurer shall not suspend compensation under this section without prior written authorization by the Board, except as provided in ORS 656.262(4)(e), (4)(h), and (4)(i)."

A specific provision of the workers' compensation statute itself, however, governs suspension of temporary disability benefits when a worker fails to comply with certain medical recommendations. That provision directs an insurer to obtain the consent of the Director of the Department of Consumer and Business Services (director) to suspend benefits for failure to cooperate with the recovery process:

> "*For any period of time* during which *any worker* commits insanitary or injurious practices which tend to either imperil or retard recovery of the worker, or refuses to submit to such medical or surgical treatment as is reasonably essential to promote recovery, or *fails to participate in a program of physical rehabilitation*, the right of the worker to compensation shall be *suspended with the consent of the director* and no payment shall be made for such period. The period during which such worker would otherwise be entitled to compensation may be reduced with the consent of the director to such an extent as the disability has been increased by such refusal."[5]

ORS 656.325(2) (1999) (emphases added).

With that statutory scheme in mind, we now turn to the pertinent facts of this case. In 1986, Jordan (claimant) injured both knees while working for his former employer. He sought and obtained workers' compensation benefits. His initial claim was closed in 1987, and his aggravation rights expired in 1992. In February 2000, claimant requested that the board reopen his claim, pursuant to its "own motion" authority under ORS 656.278, because claimant required knee surgery and sought temporary total disability payments. The board reopened the claim. Claimant had surgery on both knees. Claimant's treating physician, Dr. Edelson,

---

[5] The legislature also outlined a process for suspension of temporary disability benefits in the context of initial claims, in the form of a unilateral suspension by the insurer or self-insured employer:

"If a worker fails to appear at an appointment with the worker's attending physician, the insurer or self-insured employer shall notify the worker by certified mail that temporary disability benefits may be suspended after the worker fails to appear at a rescheduled appointment. If the worker fails to appear at a rescheduled appointment, the insurer or self-insured employer may suspend payment of temporary disability benefits to the worker until the worker appears at a subsequent rescheduled appointment."

ORS 656.262(4)(e) (1999).

determined that claimant's left knee was medically stationary, but ordered eight physical therapy sessions for claimant's right knee. Claimant attended his initial physical therapy appointment and three subsequent appointments in late October and early November 2000.

In mid-November 2000, claimant underwent emergency surgery on his left knee. He missed a November 28 physical therapy appointment and an examination appointment with Edelson on December 19. Edelson reported claimant's missed appointment to SAIF and stated that, if claimant failed to attend a rescheduled appointment, he would consider claimant's right knee medically stationary as of the date of the missed appointment. SAIF notified claimant that it had rescheduled the appointment with Edelson for February 13, 2001, and informed claimant that, if he failed to attend the rescheduled appointment, suspension of his temporary disability payments may result. Claimant attended that appointment, at which Edelson recommended four more weeks of physical therapy.

Claimant attended the first physical therapy appointment, rescheduled the second appointment, but missed the rescheduled appointment. On March 8, 2001, SAIF notified claimant that he was required to attend an April 3, 2001, appointment with Edelson and if he did not attend the appointment he risked suspension of his disability benefits. On March 15, SAIF requested that the board suspend claimant's temporary disability benefits retroactive to December 19, 2000, "until he fully and actively participates in his own recovery."

Between March 20 and April 2, 2001, claimant attended four physical therapy sessions. On April 3, claimant attended his appointment with Edelson. After one additional appointment, physical therapy was discontinued.

On May 31, 2001, in an own-motion order, the board granted SAIF's request to suspend claimant's temporary total disability benefits from December 19, 2000 to March 20, 2001. The board stated that claimant had failed to show a "valid and compelling reason" for failing to attend a medical appointment and for failing to participate fully in the physical therapy treatment. Claimant requested reconsideration.

The board rejected claimant's arguments on reconsideration and adhered to its original order.

Claimant sought judicial review, arguing that the statute governing the board's own-motion authority, ORS 656.278 (1999), did not permit the board to suspend his temporary disability benefits. *Jordan v. SAIF*, 197 Or App 599, 603, 106 P3d 663 (2005). Claimant argued that, instead, ORS 656.325 governed suspension of his temporary disability payments. According to claimant, that provision gave only the director, and not the board, authority to suspend temporary total disability payments for failure to comply with medical recommendations. *Id.* Claimant further argued that the board's rule, OAR 438-012-0035(5) (1997), which permitted the board to suspend temporary disability benefits, was beyond the board's authority. *Id.*

The Court of Appeals rejected claimant's arguments and affirmed. *Id.* at 612. The court noted that, pursuant to ORS 656.278 (1999), the board could

" 'authorize the payment of temporary disability compensation from the time the worker is actually hospitalized or undergoes outpatient surgery until the worker's condition becomes medically stationary, as determined by the board[.]' "

*Id.* at 604 (quoting ORS 656.278 (1999)). The court rejected claimant's argument concerning ORS 656.325 (1999) and agreed with SAIF and the board that that provision applied to only benefits awarded under an initial claim or an aggravation claim. *Id.* at 610. The court reasoned that ORS 656.325 (1999) included no indication that it governed the suspension of temporary disability benefits in the context of own-motion proceedings. *Id.* The court also concluded that, where, as here, the board had awarded benefits pursuant to its own-motion authority, the board had authority to suspend those benefits. *Id.* at 609. Because ORS 656.278(1) (1999) gave the board broad authority to "modify, change, or terminate former findings, orders or awards," the court concluded, "[i]t would make no sense for the legislature to have created a procedure for allowing temporary total disability benefits in the own-motion context without also giving the board authority to suspend such benefits if necessary." *Id.* Therefore, the

court held that the board "does have authority to suspend temporary total disability benefits allowed under its own motion jurisdiction." *Id.*

Claimant petitioned this court for review. We allowed review, vacated the decision of the Court of Appeals, and remanded the case to that court for reconsideration in light of this court's decision in *Dougan*, 339 Or 1.[6] *Jordan v. SAIF*, 339 Or 156, 119 P3d 224 (2005). On remand, after concluding that it did have jurisdiction under *Dougan*, the Court of Appeals readopted the reasoning and disposition expressed in its earlier opinion. *Jordan v. SAIF*, 206 Or App 511, 514, 136 P3d 1156 (2006). Claimant again sought review in this court.

■ On review, claimant offers essentially the same arguments that he made to the Court of Appeals. First, claimant argues that ORS 656.325(2) (1999) granted to the director, and not to the board, jurisdiction over suspension of benefits to compel compliance with treatment recommendations, even if the board has granted those benefits pursuant to its own-motion authority. Claimant points out that ORS 656.325(2) (1999) applies to "any worker" for "any period of time"; therefore, claimant argues, that statute applies to own-motion claims as well as initial claims and aggravation claims. Second, claimant argues that the board's rule, OAR 438-012-0035(5) (1997), exceeds the authority that the legislature granted to the board in ORS 656.278 (1999) and usurps the director's authority under ORS 656.325(2) (1999).

To support his argument that the director, and not the board, has the authority to suspend benefits for failure to comply with medical treatment recommendations, claimant asserts that several other sections of the workers' compensation law give the director, and not the board, jurisdiction over medical treatment issues. *See, e.g.,* ORS 656.245 (granting authority over certain medical treatment issues to director); ORS 656.248 (granting authority to director to promulgate rules regarding reimbursement for medical services); ORS 656.260 (granting authority to director over managed care

---

[6] Dougan held that appellate courts have jurisdiction to review only those own-motion orders that diminish or terminate an award. *Dougan*, 339 Or at 3.

issues); ORS 656.327 (granting authority to director over medical treatment disputes). Claimant cites another provision, governing the respective authority of the board and the director, that also carves out certain medical treatment issues for the director's determination. *See* ORS 656.704(3) (giving board jurisdiction over "matters concerning a claim," but excluding certain medical issues from the definition of that phrase). Even the own-motion statute itself, claimant asserts, removes most medical benefits issues from the purview of the board's own-motion jurisdiction. *See* ORS 656.278(1)(b) (allowing board to authorize medical benefits only for injuries older than January 1, 1966).

SAIF asserts, on the other hand, that the board has jurisdiction over all aspects of a claim under its own-motion authority. In other words, because the board is the only entity that may award own-motion benefits, the board is the proper entity to suspend those benefits. Additionally, SAIF argues here, as it did before the Court of Appeals, that ORS 656.325(2) (1999) does not apply to own-motion claims. SAIF asserts that that provision applies to only claims in the initial or aggravation phases of a workers' compensation claim in which a worker is entitled to benefits.

We begin our analysis with an examination of the board's authority pursuant to ORS 656.278(1) (1999). If that provision grants the board authority to suspend claimant's temporary disability benefits, then our inquiry need go no further. We apply the familiar methodology from *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

First, we examine the text and context of ORS 656.278(1) (1999). We look to the "plain, natural and ordinary meaning" of the words used. *PGE*, 317 Or at 611. Additionally, as part of this first level of analysis, we apply rules of construction that inform us how to read the text. For example, ORS 174.010 dictates that we not "insert what has been omitted" or "omit was has been inserted." Also, "use of a term in one section and not in another section of the same statute indicates a purposeful omission." *PGE*, 317 Or at 611.

The text of ORS 656.278 (1999) gives the board "continuing" jurisdiction and provides that the board "may, upon

its own motion * * * *modify, change or terminate* former findings or awards if in its opinion such action is justified[,]" where there is a worsening of a compensable injury that requires surgery or hospitalization. ORS 656.278(1) (1999) (emphasis added). Pursuant to its own-motion jurisdiction, the board also "may *authorize* the payment of temporary disability compensation from the time the worker is actually hospitalized or undergoes outpatient surgery until the worker's condition becomes medically stationary[.]" ORS 656.278(1)(a) (1999) (emphasis added).

Thus, the authority granted to the board encompasses four types of actions: (1) modification of former findings or awards; (2) change of former findings or awards; (3) termination of former findings or awards; and (4) authorization of the payment of temporary disability compensation. None of those categories explicitly includes "suspension" of temporary disability payments. The legislature, however, has specified suspension procedures in other sections of the workers' compensation scheme, *see, e.g.,* ORS 656.262(4)(e) (1999) and ORS 656.325(2) (1999), but has failed to do so in this particular provision. This exclusion, at a minimum, is some indication that the legislature intended to omit suspension from the list of own-motion authority that it granted to the board. *See Springfield Utility Board v. Emerald PUD*, 339 Or 631, 642, 125 P3d 740 (2005) (where the legislature uses term in one section of statute, but not another, court presumes that omission is purposeful).

Here, the legislature failed to include suspension as part of the board's own-motion authority. Instead, the legislature gave the *director* authority to suspend benefits "for any period of time" where a claimant fails to participate in a program of physical rehabilitation. ORS 656.325(2) (1999). In that provision, the legislature set forth particular procedures to govern suspension of payments in situations similar to claimant's situation.

When general and particular provisions of a statute are inconsistent, the particular provision controls. ORS 174.020(2) ("When a general and particular provision are inconsistent, the latter is paramount to the former so that a

particular intent controls a general intent that is inconsistent with the particular intent."). Contrary to the Court of Appeals' conclusion and to SAIF's argument, nothing in ORS 656.325(2) (1999) limits its applicability to only initial and aggravation claims. Neither does anything in that subsection preclude its applicability to own-motion awards. In fact, ORS 656.325(2) (1999) applies "[f]or any period of time." To the extent that the general provision governing own-motion authority, ORS 656.278 (1999), is inconsistent with the particular provision governing suspensions for failure to participate in physical rehabilitation, ORS 656.325(2) (1999), the particular provision controls. ORS 656.325(2) (1999), therefore, governed suspension of claimant's own-motion benefits.

We note that the legislature did grant to the board the authority to "make and declare all rules which are reasonably required in the performance of its duties, including but not limited to * * * exercising its authority under ORS 656.278." ORS 656.726(5) (1999). That rulemaking authority, however, is limited by the board's "authority under ORS 656.278 [(1999)]," which includes only modifying, changing or terminating former awards, or authorizing the payment of temporary total disability benefits. Despite the fact that ORS 656.278(1) (1999) does not expressly include the power to suspend benefits for failure to cooperate with medical treatment recommendations, the board promulgated OAR 438-012-0035(5) (1997) to govern the suspension of temporary disability benefits.

As noted earlier, the Court of Appeals concluded that such a rule was reasonably required for the board to carry out its own-motion authority to allow payment of temporary benefits:

"It would make no sense for the legislature to have created a procedure for allowing temporary total disability benefits in the own motion context without also giving the board authority to suspend such benefits if necessary. That is particularly so when the legislature gave the board authority to adopt rules establishing reasonable procedures for carrying out its own motion authority. Had the legislature intended that the board not have authority, in its own motion jurisdiction, to suspend benefits, it could easily have so provided."

*Jordan*, 197 Or App at 609-10. Though that reasoning has logical appeal, the rules of statutory construction provide that, had the legislature intended to grant the board suspension authority, it easily could have done so, as it did in other sections of the workers' compensation scheme. *See PGE*, 317 Or at 611 ("use of a term in one section but not in another section of the same statute indicates a purposeful omission"). We therefore conclude that the board acted beyond its authority when it promulgated OAR 438-012-0035(5) (1997).

In sum, we conclude that the board did not have authority to suspend claimant's benefits because the provision governing the board's own-motion authority, ORS 656.278 (1999), did not include suspension as one of the board's enumerated powers. We also conclude that the specific provision of the workers' compensation law concerning suspension of benefits for failure to comply with certain treatment recommendations, ORS 656.325(2) (1999), applied to claimant's own-motion benefits. Finally, because the legislature did not provide suspension authority to the board in ORS 656.278 (1999), any rule permitting the board to suspend temporary disability benefits in that context is not "reasonably required" in the performance of the board's duties and is beyond the board's authority.[7]

The decision of the Court of Appeals is reversed. The order of the Workers' Compensation Board is reversed, and the case is remanded to the Workers' Compensation Board for further proceedings.

---

[7] As we noted earlier, the board subsequently amended the regulation to allow insurers to suspend unilaterally temporary disability payments in certain instances. Because this case concerns only the 1997 version of the board's rule, we are not presented with the question whether the new rule is beyond the board's authority. We note, however, that the new rule continues to govern suspension procedures, although the current version of ORS 656.278 still does not explicitly include authorization to suspend temporary disability benefits.