Argued and submitted August 15, 2013, reversed April 23; respondent's petition for reconsideration filed June 6, and appellant's response to petition for reconsideration filed September 3, allowed by opinion October 8, 2014
See 266 Or App 208, ___ P3d ___ (2014)

Ken LEWIS
and Utility Reform Project,
*Plaintiffs-Respondents,*

*v.*

Lee BEYER,
Ray Baum, and John Savage,
*Defendants,*

*and*

OREGON PUBLIC UTILITY COMMISSION,
*Defendant-Appellant.*

Marion County Circuit Court
07C11429; A150592

325 P3d 59

Karla H. Ferrall, Assistant Attorney General, argued the cause for appellant. With her on the brief were Mary H. Williams, Deputy Attorney General, and Anna M. Joyce, Solicitor General. With her on the reply brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Daniel W. Meek argued the cause and filed the brief for respondent Utility Reform Project.

No appearance for respondent Ken Lewis.

Before Duncan, Presiding Judge, and Armstrong, Judge, and Schuman, Senior Judge.

SCHUMAN, S. J.

## SCHUMAN, S. J.

The Public Utility Commission (the PUC) appeals from a supplemental judgment of the Marion County Circuit Court awarding attorney fees to plaintiffs Ken Lewis and the Utility Reform Project (URP) after plaintiffs prevailed in an action under ORS 183.490 to compel the PUC to order four utilities to establish "automatic adjustment clauses" pursuant to Senate Bill (SB) 408 (2005) and *former* ORS 757.268 (2005).[1] In an earlier iteration of this case, *Lewis v. Beyer*, 235 Or App 367, 370-71, 232 P3d 980 (2010), we remanded the supplemental judgment to the trial court so that the court could provide a more complete explanation of the rationale for its attorney fee award, as required by *McCarthy v. Oregon Freeze Dry, Inc.*, 327 Or 84, 90-91, 957 P2d 1200 (1998). On remand, the court explained that the award was based on several statutes as well as equitable principles. We reverse.

As we explained in *Industrial Customers of Northwest Utilities v. PUC*, 240 Or App 147, 149, 246 P3d 1151 (2010):

"Under Oregon law, a public utility is allowed to build into its rates the amount that the utility expects to pay in income taxes. There was, for a long while, no regulatory mechanism to subsequently verify whether the utility's tax projections—and the amount assumed in rates—bore any relationship to the amount of taxes actually paid by the utility. In 2005, the Oregon legislature passed a law intended to close that loophole, thereby prohibiting public utilities from charging ratepayers for taxes far in excess of what the utilities actually pay. The law requires a public utility to annually file a tax report with the [PUC], which the commission then reviews to determine the difference between the amount of taxes assumed for ratemaking purposes and taxes ultimately paid either by the utility or by the utility's affiliated corporate group that are 'properly attributed to the regulated operations of the utility.' [*Former*] ORS 757.268(4). If the commission determines that the difference between the taxes assumed in rates and the taxes paid is $100,000 or more, it triggers an automatic

---

[1] In 2011, the legislature repealed ORS 757.268. Or Laws 2011, ch 137, § 5.

adjustment to the rate schedule, otherwise known as an 'automatic adjustment clause.'"

*Id.*

In simplest terms, SB 408 provided a method for utilities to "true up" their initial estimated or assumed taxes based on taxes actually paid. The PUC adopted OAR 860-022-0041 to implement the new law. The rule provides detailed instructions for the calculation of taxes and the reporting of tax information by utilities and further requires the PUC to establish an ongoing docket for each tax report. OAR 860-022-0041(3) - (7). As with *former* ORS 757.268, if the PUC finds a difference of $100,000 or more between the taxes assumed in rates and the taxes paid, OAR 860-022-0041(8) requires a utility to file an amended tariff to implement a rate adjustment, either upward or downward, depending on whether the assumed taxes were lower than actual taxes or higher.

However, the determination of a difference of $100,000 and a utility's establishment of an automatic adjustment clause does not result in the automatic implementation of a rate adjustment without further consideration by the PUC. Under *former* ORS 757.268(8), the PUC has discretion to make certain adjustments to the rates resulting from automatic adjustment clauses and is required to terminate the automatic adjustment clause in certain circumstances. Specifically, the PUC may include in a utility's rates deferred taxes resulting from accelerated depreciation or other tax treatment of utility investment and tax requirements and benefits that are required to be included in rates in order to ensure compliance with the normalization requirements of the federal tax law. The PUC must terminate an automatic adjustment clause if the PUC determines that the automatic adjustment clause would have a material adverse effect on customers of the public utility. Further, the PUC may not approve any rate resulting from an automatic adjustment clause if the rate is not "fair, just and reasonable." ORS 757.210. Finally, and most significantly for purposes of this case, under SB 408, the automatic adjustment clause requirement expressly applies only to taxes paid and collected from ratepayers on or after January 1, 2006:

"If an automatic adjustment clause is established under section 3 of this 2005 Act, notwithstanding any other provision of section 3 of this Act, the automatic adjustment clause shall only apply to taxes paid to units of government and collected from ratepayers on or after January 1, 2006."

Or Laws 2005, ch 845, § 4. "[T]here is no statutory provision requiring the PUC to order utilities to refund amounts collected prior to January 1, 2006." *Utility Reform Project v. PUC*, 261 Or App 388, 404, 323 P3d 430 (2014).

Pursuant to *former* ORS 757.268 and OAR 860-022-0041, in October 2005, each of the four utilities involved in this case—Pacific Power, Portland General Electric, NW Natural Gas Company, and Avista Corporation—filed tax reports with the PUC regarding the three most recent consecutive fiscal years that concluded prior to the date of the filing of the tax report: fiscal years 2002, 2003, and 2004. In November 2005, the PUC concluded that taxes collected by each utility differed by at least $100,000 from the amount paid by the utility to units of government. The PUC ordered each utility to file a tariff to establish an automatic adjustment clause, and opened four contested case dockets to investigate the tariffs.

In December 2005, plaintiffs filed a petition to intervene in all four dockets, and the PUC granted the petition in January 2006. In February 2006, each of the four utilities filed tariffs for automatic adjustment clauses and, in March 2006, the PUC suspended those tariffs pending further investigation.

The PUC issued its permanent rules implementing SB 408 on September 14, 2006, setting forth timelines for the PUC's review of tax reports and the utilities' filing of tariffs for automatic adjustment upon a PUC determination that the amount of taxes collected by a utility differed from those paid to units of government by more than $100,000.

On September 27, 2006, the PUC administrative law judge who was then assigned to the dockets relating to the four utilities determined in a memorandum order that the "true-up" requirement of SB 408 was inapplicable to taxes collected or paid before January 1, 2006, and proposed that the utilities withdraw their tariffs for automatic

adjustment clauses filed in February 2006. No party contested the ALJ's conclusion, and all four utilities withdrew their tariffs. No party sought judicial review of the PUC's order determining that the requirement for establishment of an automatic adjustment clause did not apply to taxes paid or collected from ratepayers before January 1, 2006.

On April 11, 2007, the PUC issued an order in the four contested case dockets regarding the utilities' tax reports, finding significant differences (both positive and negative) between the utilities' taxes paid and the amounts authorized to be collected in 2005 for the four utilities. The PUC found that the differences exceeded the $100,000 threshold; however, as previously determined in the memorandum order of September 27, 2006, the PUC concluded that no formal tariff filings were required of those utilities. The PUC reasoned that, under SB 408, although the utilities' filing and reporting obligations became effective on the bill's passage on September 2, 2005, no adjustment would apply for taxes paid and collected before January 1, 2006. Or Laws 2005, ch 845, § 4; *see also Utility Reform Project*, 261 Or App at 404 (no statutory provision requires the PUC to order utilities to refund amounts collected prior to January 1, 2006). The PUC explained:

> "For each utility, we have determined that the amount of income taxes paid to units of government that is properly attributed to regulated operations differs from the amount authorized to be collected in rates by more than $100,000. As Staff notes, such findings would ordinarily trigger OAR 860-022-0041(8), which requires each utility to file an amended tariff, to become effective June 1 of each year, to implement any required rate adjustment. These findings, however, relate only to taxes paid and collected during the years 2003, 2004 and 2005, or in the case of PacifiCorp address estimated actual results for a portion of 2006. Because SB 408 applies only to taxes paid and collected on or after January 1, 2006, there can be no rate adjustment for PGE, NW Natural or Avista. Moreover, we agree with Staff and conclude that no rate adjustment should be made at this time for PacifiCorp.
>
> "Commission counsel has advised that no formal filing is needed at this time."

No party sought judicial review of that order, and it became final 60 days after its issuance and service, that is, in June 2007. *See* ORS 183.482; ORS 756.610 (providing that judicial review of a PUC order is in the Court of Appeals under ORS 183.480 to 183.497, as review of an order in a contested case; appeal deadline is 60 days).

On October 15, 2007, each of the four utilities filed with the PUC tax reports regarding taxes collected and paid for the fiscal years 2004, 2005, and 2006. The PUC established dockets for each utility and adopted a schedule that contemplated a decision by the PUC on April 11, 2008, concerning automatic adjustment clauses for each utility, and the implementation of any automatic adjustment clause on June 1, 2008.

This appeal arises from a separate action by plaintiffs, filed on October 29, 2007, for declaratory and injunctive relief, pursuant to ORS 183.490[2] and ORS 28.010, to require the PUC to order the four public utilities to establish automatic adjustment clauses under *former* ORS 757.268 for taxes collected in 2003, 2004, and 2005. On cross-motions for summary judgment, the circuit court granted plaintiffs' motion and ordered the PUC to direct the utilities to establish an automatic adjustment clause "forthwith without any further delay." Apparently, the circuit court disagreed with the PUC that the provision of SB 408 limiting applicability of automatic adjustment clauses to taxes paid to units of government and collected from ratepayers on or after January 1, 2006, obviated the need to establish automatic adjustment clauses for the years 2003, 2004, and 2005.

The PUC did not appeal from the circuit court's general judgment on the claims, and in fact issued the required directive to the utilities as ordered by the circuit court. But the PUC did appeal the supplemental judgment awarding

---

[2] Under ORS 183.490,

"[t]he court may, upon petition as described in ORS 183.484, compel an agency to act where it has unlawfully refused to act or make a decision or unreasonably delayed taking action or making a decision."

ORS 183.484, in turn, applies to petitions for review in other than a contested case. In *Taylor v. Board of Parole*, 200 Or App 514, 519, 115 P3d 256, *rev den*, 339 Or 475 (2005), we held that ORS 183.490 applies only in the context of a petition for judicial review under ORS 183.484, which this is not.

attorney fees.[3] In *Lewis*, 235 Or App at 370-71, we remanded the supplemental judgment to the circuit court for that court to make a more complete explanation of its award of attorney fees.

On remand, the circuit court entered a second supplemental judgment, awarding the same attorney fees and costs as the original supplemental judgment, and incorporating an order of April 27, 2011, setting forth its findings and conclusions. The circuit court's order awarding attorney fees of $21,070, with interest of 9 percent per annum, and costs of $310, included the following "mixed findings of fact and conclusions of law":

"1) Plaintiffs brought this case to vindicate the rights of all citizens of this state to have its laws implemented by the state agency charged with their enforcement, and not for any personal or pecuniary gain. Therefore, this court finds that, having achieved that end, plaintiffs can and should be awarded reasonable costs and attorney fees against defendant pursuant to this court's inherent equity power, as recognized and repeatedly approved by the appellate courts in many cases arising under a number of different fact patterns. *** At least in this court's judgment, it is imperative that both the general rule of law and the individual laws of this state be embraced and fully implemented by all executive agencies, and especially by those specifically entrusted with their enforcement. To judicially countenance avoidance rationales and evasion practices by agencies seeking to improve on the legislatively devised statutory schemes the agencies are charged with implementing, as occurred in this case, would be to encourage the repetition and expansion of such tactics by this and other agencies. In this context, it makes no difference whether a particular exercise of this court's inherent

_____

[3] In compliance with the circuit court's order, on January 22, 2008, the PUC adopted an order requiring establishment of preliminary automatic adjustment clauses based on amounts reported by utilities but not yet reviewed by the PUC. The PUC explains in its briefing in this case that that action rendered moot any appeal by the PUC concerning the merits of the circuit court's ruling. Additionally, as previously noted, while the circuit court matter was pending relating to the tax filings for 2003, 2004, and 2005, the utilities filed tax reports for the 2006 tax year. The PUC initiated a review of the reports and, pursuant to schedules set forth in its administrative rules, would finalize its review of the filings and approve any necessary automatic adjustment clauses on April 11, 2008, for rates that would be effective on June 1, 2008.

equitable powers is best explained by the so called 'public benefit doctrine' or by the 'substantial benefit' doctrine, or any other doctrine. The source of the discretionary power to award attorney fees in appropriate cases lies not within the various doctrines articulated in its support, but rather within the inherent equitable powers of the circuit court. Accordingly, the process of reviewing and analyzing the court's discretionary exercise of this equitable power in any particular case should be the same regardless of the doctrine describing it.

"2) In my view, an award of attorney fees in this case is further supported by ORS 183.480, 183.484, 183.490, and 183.497(1)(a). That overall statutory scheme seems to treat an unlawful agency failure to act as a final agency action. This statutory treatment certainly makes sense in a case such as this one where the agency both unreasonably and deliberately refused to act in accordance with the statutory timeline clearly mandated by the legislation being implemented. And once that timeline had passed, the agency's unlawful conduct became not only final, but irrevocable.

"3) This award of attorney fees is also supported by ORS 183.486(1) which further empowers the court reviewing unlawful agency action under ORS 183.484, and directs that it 'shall provide whatever relief is appropriate' and authorizes it to also 'order such ancillary relief as the court finds necessary to redress the effects of official action wrongfully taken or withheld.' (Although this particular statutory basis was not explicitly relied upon by this court at the time the authority to award attorney fees was first argued and decided, it was set forth in plaintiffs' original pleadings, various memoranda, and their statement for attorney fees and costs.)

"4) ORS 183.497(1)(b) also fully supports, and indeed seems to require, an award of reasonable attorney fees and costs in this case. Plaintiffs have amply demonstrated that the agency in question deliberately refused to implement the legislatively mandated timeline and that in doing so it acted without any objectively reasonable basis in fact or law. And there has been no documentation of any substantial justification or special circumstances offered in support of the agency's conduct, other than the after the fact excuse that it seemed more prudent to wait for an expected and hopefully favorable IRS letter ruling approving the state legislature's already enacted mandate. With all due respect

to the agency, waiting for an IRS letter ruling to support a state legislative enactment before implementing the legislation in accordance with its mandatory timelines is not supported by any credible application of the principles of federalism, nor by the respect and deference that any state agency owes to its own governing legislature.

"The above conclusions are supported by this court's earlier letter opinion of January 10, 2008. These conclusions are also based upon the following additional explicit findings:

"1) The agency's deliberate refusal to act in accordance with the mandatory legislative timeline was both unreasonable and arbitrary.

"2) An award of attorney fees in this case is likely to deter both this agency and others from deliberately circumventing legislative mandates.

"3) The amount of fees and costs awarded is reasonable based on counsel's expertise in this rather esoteric and specialized sub area of administrative law, and the novelty and difficulty of the questions presented, as well as the results obtained against highly skilled defense counsel.

"4) Moreover, if such awards are not routinely made in such cases experienced practitioners are unlikely to undertake such cases in the future, and unlawful agency refusals to abide by statutory directives will not only go unchecked, but they may also even proliferate."

The PUC seeks judicial review of the second supplemental judgment awarding attorney fees, challenging the circuit court's authority to award fees in this case. For the reasons explained herein, we agree with the PUC.

The merits of the court's decision in this case were never appealed; they have nonetheless been undercut by our recent decision in *Utility Reform Project*, 261 Or App at 404 (no statutory provision requires the PUC to order utilities to refund amounts collected prior to January 1, 2006). However, as noted, the merits of plaintiffs' claims are not before us and we do not address them. We therefore explain briefly why, nonetheless, each of the alleged bases for attorney fees is inapplicable.

In Oregon, attorney fees are available only as authorized by statute or contract or, in exceptional cases, under an equitable principle such as the "public benefit" or "substantial benefits" exception. *See Armatta v. Kitzhaber*, 327 Or 250, 287-88, 959 P2d 49 (1998); *Deras v. Meyers*, 272 Or 47, 65-66, 535 P2d 541 (1975). Plaintiffs asserted a right to attorney fees under various provisions of the Administrative Procedures Act (APA), ORS chapter 183, and also claimed that they should recover them for having conferred a public benefit or a substantial benefit. The circuit court agreed with all of plaintiffs' contentions. It also justified its award based on the court's inherent equitable powers, citing equitable principles generally, but declining to rely on any particular theory. The court explained that "plaintiffs brought this case to vindicate the rights of all citizens of this state to have its laws fully implemented by the state agency charged with their enforcement, not for any personal or pecuniary end," and that, "having achieved that end, plaintiffs can and should be awarded reasonable costs and attorney fees against defendant pursuant to this court's inherent equity power." Reviewing the question whether the circuit court had authority to award attorney fees for errors of law, *Stocker v. Keith*, 178 Or App 544, 547, 38 P3d 283 (2002), we explain why we reject each of the asserted bases for attorney fees.

Plaintiffs and the circuit court cited ORS 183.497, under which attorney fees either *must* be awarded (when under ORS 183.497(1)(b) the agency acted without a reasonable basis in fact or in law) or *may* be awarded as a matter of discretion (ORS 183.497(1)(a)) to the prevailing petitioner in a proceeding for: (1) judicial review of a final agency order; (2) judicial review of a declaratory ruling; or (3) a judicial determination of the validity of a rule under ORS 183.400. ORS 183.497. *See Kaib's Roving R.Ph. Agency v. Employment Dept.*, 338 Or 433, 439, 111 P3d 739 (2005). This is not one of those three enumerated proceedings. It is not a petition for judicial review of an agency order. As noted, plaintiffs' complaint refers to ORS 183.490, and it does not ask for review of the PUC's order. Indeed, it could *not* be a valid petition for review of an agency order because the order in question issued in April 2007, the deadline for filing a petition for review expired 60 days later in June 2007, and this action

was not filed until October 2007. Nor do plaintiffs seek review of the validity of a declaratory ruling or an administrative rule.

Plaintiffs, however, contend that an agency's *failure* to act is functionally equivalent to an order under ORS 183.484. If, by that contention, they mean that, in this case, their petition for judicial review under ORS 183.490 was not based on the PUC's failure to act, but on an allegedly erroneous decision, we agree. The PUC issued an order in an administrative proceeding to which plaintiffs were parties in which it explicitly determined the question that plaintiffs raised in their claim to the circuit court, and concluded as a matter of law that SB 408 did not require or even permit the establishment of an automatic adjustment clause for taxes collected or paid before January 1, 2006. Plaintiffs did not seek judicial review of that order, and they cannot now collaterally attack it by attempting to style it a failure to act. The action-compelling power of ORS 183.490 does not apply when an agency acts, but allegedly acts incorrectly. *Mendieta v. Division of State Lands*, 148 Or App 586, 594, 941 P2d 582 (1997), *rev dismissed*, 328 Or 331 (1999).

Put another way: If we take plaintiffs' claim to be asserted under ORS 183.490, we must reject it because it is not, in fact, a claim to compel agency action; the agency has acted, albeit with a result that plaintiffs contest. If, on the other hand, we take plaintiff's claim to be asserted under ORS 183.484 (or, as plaintiffs argue in their brief, as a claim under ORS 183.490, which is a *subset* of ORS 183.484), then we must reject the claim because it was not timely. The only way we could countenance plaintiff's claim under ORS 183.497 would be to regard their claim as a hybrid, availing itself of the expansive timeline of challenges to agency inaction under ORS 183.490 while bearing the substantive character of a challenge to an order under ORS 183.484. We find no support in law or logic for doing so.

The circuit court also cited ORS 183.486 as authority for its award of attorney fees. That section provides that a court may award "ancillary relief" on petitions brought under ORS 183.482 and ORS 183.484. Assuming, without deciding, that attorney fees are a type of "ancillary relief"

that might otherwise be available under ORS 183.486, because this is not a timely proceeding under either ORS 183.482 or ORS 183.484, we conclude that ORS 183.486 does not provide a basis for an award of attorney fees.

Finally, we reject plaintiffs' contention that they are entitled to attorney fees by virtue of the court's exercise of its inherent equitable powers, under either the public benefit doctrine, *see Armatta*, or the substantial benefit doctrine. *See Crandon Capital Partners v. Shelk*, 342 Or 555, 563, 157 P3d 176 (2007). As the court said in *Armatta*, under the public benefit doctrine, the plaintiff must have been seeking "to vindicate an important constitutional right." 327 Or at 287-88. The constitutional principle that has been vindicated in this case, if there is one, has not been mentioned by plaintiffs.

Nor are we persuaded that plaintiffs have conferred a "substantial benefit on others" so as to justify a spreading of the legal costs to those benefited, as the court described that equitable principle in *Crandon*. 342 Or at 566. As the court explained, there are some circumstances—such as shareholder derivative suits—where it is equitable for the court to "spread the cost of litigation to avoid unjust enrichment to persons who have benefitted from the litigation without shouldering any of the costs, as well as to compensate the party's attorneys for the services that they have rendered." *Id.* As the PUC points out, the relief that plaintiffs obtained here, that is, the PUC's order for the utilities to establish automatic adjustment clauses for the years 2003, 2004, and 2005, is only a preliminary step in the process of implementing automatic rate adjustments—a process that, as it happens, will never occur. *Utility Reform Project*, 261 Or App at 404. It is not apparent on this record what monetary benefit, if any, would accrue to ratepayers, as a result of plaintiffs having prevailed in the circuit court, that justifies spreading the costs of litigation to them by assessing fees against the PUC. Also, it is not clear how assessing the costs to the PUC would serve the purpose of spreading those costs to ratepayers rather than to the public at large.

Reversed.