Argued and submitted April 17, judgment requiring issuance of final certification vacated, award of attorney fees reversed December 16, 2015

CASCADE KELLY HOLDINGS, LLC,
*Petitioner-Respondent,*

*v.*

OREGON DEPARTMENT OF ENERGY;
and Michael Kaplan,
in his official capacity as Acting Director of
Oregon Department of Energy,
*Respondents-Appellants.*

Marion County Circuit Court
10C15088, 10C15089;
A152224 (Control), A152225

365 P3d 603

Stephanie L. Striffler, Assistant Attorney General, argued the cause for appellants. With her on the briefs were Mary H. Williams, Deputy Attorney General, Anna M. Joyce, Solicitor General, and Carson L. Whitehead, Assistant Attorney General.

Crystal S. Chase argued the cause for respondent. With her on the brief were Per A. Ramfjord and Stoel Rives LLP.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

DEVORE, J.

**DEVORE, J.**

In these consolidated cases, petitioner Cascade Kelly Holdings filed an action in the Circuit Court of Marion County under ORS 183.490 of the Administrative Procedures Act (APA) and an alternate claim for declaratory relief under ORS 28.010, seeking to compel the Oregon Department of Energy to certify that petitioner is entitled to claim or to sell business energy tax credits pursuant to *former* ORS 469.215 (2009), for petitioner's ethanol production and transfer facilities.[1] On cross-motions for summary judgment, the circuit court rejected the department's contention that the court lacked authority to grant the requested relief, and granted relief under ORS 183.490, ruling that the department had unreasonably failed to process and accept petitioner's application for final certification of energy tax credits, as required by ORS 469.215. The court ordered the department to issue final certification for more than $8 million in energy tax credits and awarded petitioner attorney fees of $347,157.69 under ORS 183.497 or ORS 182.090. The court dismissed petitioner's alternate claim for a declaratory judgment as moot.

The department appeals, raising several assignments of error. The department has also given notice of probable mootness under ORAP 8.45, as a result of the "sunset" of the business energy tax credit program. As explained below, we conclude that the program's end now precludes the remedy awarded by the trial court and therefore makes the underlying controversy nonjusticiable, and we therefore do not address the merits of the circuit court's ruling. But, because the department also challenges the award of attorney fees, the appeal itself is not moot. We therefore write to address the department's assignment of error regarding attorney fees, and we reverse the award.

At the outset, we provide the statutory and factual context for this dispute. Oregon's business energy tax

---

[1] The statute was renumbered in 2011 and is now ORS 469B.161. Throughout this opinion, all references to the provisions of ORS chapter 469 are to those that were in effect in 2009, the version applicable to this case. All administrative rule references are to temporary administrative rules adopted by the department on November 3, 2009.

credit, first enacted by the Legislative Assembly in 1979, was based on a public policy "to encourage the conservation of electricity, petroleum and natural gas by providing tax relief for Oregon facilities that conserve energy resources or meet energy requirements through the use of renewable resources." ORS 469.190. At the relevant time, a business that was engaged in the manufacture or distribution of alternate fuels such as ethanol could apply for certification for energy tax credits, to be determined as a percentage of the certified cost of construction of its facilities. ORS 315.354(3); ORS 469.205; ORS 469.215. Upon receipt of a final certification for energy tax credits from the department, the tax credits could be applied against the taxpayer's Oregon income tax obligation over a period of years. ORS 315.354. The tax credits could be claimed by the facility's owner or could be sold to a "pass-through partner" in exchange for their present value. ORS 469.205(1)(c)(A); ORS 469.206; OAR 330-090-0110(45) (defining "pass-through partner" as "[a]n individual, C corporation or S corporation that purchases a tax credit certificate in return for a cash payment equivalent to the net present value of the [business energy tax credit]").

The facilities in this case are known as "Port Westward" and were designed and constructed for the production and loading of ethanol at the Port of St. Helens in Clatskanie, Oregon. The facilities were built between 2006 and 2008 by Cascade Grain Products, LLC. Before it began construction of the facilities, Cascade Grain filed an application with the department and was approved for a "preliminary certificate" for energy tax credits for both facilities. *See* ORS 469.205 (describing application process for preliminary certification for the energy tax credit). When, in June 2008, the facilities were largely complete and operational, Cascade Grain applied for final certification pursuant to ORS 469.215. Pursuant to the department's administrative rule, OAR 330-090-0130(9)(c), when an applicant desires to sell its tax credits to a pass-through partner, the department does not issue final certification of the tax credits to the facility owner. Rather, the department issues "certified amount letters" authorizing the facility owner to pass through its tax credits. The department issues the tax

credits to the pass-through partner after the pass-through partner has paid for the credits and the department has given final approval to the transfer of the credits. Because Cascade Grain intended to sell its tax credits to pass-through partners, Cascade Grain's application was entitled an "Application for Final Certification for Pass-Through Projects." The department issued certified amount letters to Cascade Grain, certifying eligible project costs for the pass-through program of $22,000,000 (with a tax credit value of $11,000,000) for the ethanol production facility and $10,166,668 (with a tax credit value of $5,083,334) for the ethanol distribution facility.[2] The certified amount letters allowed Cascade Grain to transfer eligible tax credits to pass-through partners in exchange for cash payments of 33.5 percent of the eligible final certified costs, or $7.37 million.

Cascade Grain transferred some of its eligible tax credits for the ethanol production facility to three pass-through partners and, when the transfers were approved, the department issued final tax credit certificates to the pass-through partners. No final certificates were issued for the remaining, potential credits, because no pass-through partners had been identified and no cash payments had been made to Cascade Grain for the remaining $3,250,000 in eligible certified costs on the production facility or the entire eligible certified cost of $5,083,334 on the distribution facility.

In January 2009, Cascade Grain ceased operations and filed for bankruptcy. Cascade Grain's parent company, JH Kelly, acquired the facilities at a bankruptcy auction and transferred them to petitioner on December 23, 2009. At that time, the facilities were in "cold maintenance mode." Because the facilities were damaged from not having been operated for over a year, petitioner could not begin operations until it had hired employees, made repairs,

---

[2] A "certified amount letter" is not a statutory term. It is a term used by the department to describe a letter that the department issues to a facility that intends to sell its tax credits to a pass-through partner. The certified amount letter certifies the facility's eligible costs. The department issues the final tax credit certificate to the pass-through partner when the pass-through partner makes the required cash payment to the facility owner. OAR 330-090-0130(9)(c).

obtained permits, and fulfilled obligations to multiple stakeholders.

After petitioner acquired the facilities on December 23, 2009, petitioner submitted applications for final pass-through certification on December 31, 2009. ORS 469.215(2)(b)(A) (providing that "any person" may apply for final certification "after acquisition of the proposed facility"). Under ORS 469.215(4), "[t]he director [of the department] shall act on an application for certification before the 60th day after the filing of the application[.]"[3] Under ORS 469.215(5), if the director rejects an application for final certification,

> "the director shall send to the applicant written notice of the action, together with a statement of the findings and reasons therefor, by certified mail, before the 60th day after the filing of the application."

The subsection concludes that the "[f]ailure of the director to act constitutes rejection of the application." ORS 469.215(5).

The department's administrative rules included similar provisions. Under OAR 330-090-0133(1)(a), "[w]ithin 60 days after a completed final certification application is filed," the Director of the department "will either approve or deny the final application."[4] Similar to ORS 469.215(5), OAR 330-090-0133(2)(a) provides that,

> "[i]f the Director does not approve the application, the Director will provide written notice of the action, including a statement of the findings and reasons for the denial by regular and certified mail."

And also similar to ORS 469.215(5), OAR 330-090-0133(2)(c) states that if the Director "does not issue a final certification

---

[3] It is not disputed that, although the department had issued certified amount letters to Cascade Grain, the department never issued a final certification for the unclaimed eligible costs identified in the certified amount letters. A good portion of the parties' dispute in this litigation centered on whether the certified amount letters issued to Cascade Grain were, for all practical purposes, the equivalent of a "final certification" that might have made the department's review of petitioner's application a technical formality. We agree with the department that there is no statutory support for that view.

[4] OAR 330-090-0133(1)(a) includes the additional provision that, within 30 days after a final certification application is filed, the Director "will determine whether the application is complete" and notify the applicant of any deficiencies.

within 60 days after an application is filed, the application is denied pursuant to ORS 469.215(4)."[5]

The department took no action on petitioner's applications for final certification. Thus, on March 2, 2010, the 61st day after the filing of the applications, the applications were deemed rejected by operation of ORS 469.215(5).[6]

Within 60 days of the date that its applications were rejected by operation of ORS 469.215(5), petitioner filed this action under ORS 183.490, seeking to "compel [the] agency to act where it has unlawfully refused to act[.]"[7] Petitioner complained that, under ORS 469.215(2)(b)(B) and ORS 315.354(5), it was entitled as a matter of law to final certification for the remaining tax credits that had not been used by Cascade Grain. Petitioner characterized the department's failure to process its applications as a "refusal to act by not processing the Subject Application in accordance with applicable statutes, regulations, and/or [department] procedure." Petitioner alleged a number of ways in which petitioner

---

[5] Although the administrative rule referred to ORS 469.215(4) rather than to ORS 469.215(5), it is clear that the reference is to the statement in ORS 469.215(5) that the "[f]ailure of the director to act constitutes rejection of the application."

[6] ORS 469.215 formerly included a subsection providing that a rejection of an application could be challenged through a request for a contested case hearing. *Former* ORS 469.215(6) provided:

"If the application is rejected for any reason, or if the applicant is dissatisfied with the certification of cost, then, within 60 days of the date of mailing of the notice under subsection (5) of this section, the applicant may request a hearing to appeal the rejections under the provisions of ORS 183.370 to 183.500 governing contested cases."

The Legislative Assembly repealed that subsection in 1999. Or Laws 1999, ch 365, § 4.

[7] Petitioner also filed a petition for judicial review in this court and a complaint in the Oregon Tax Court. Petitioner took the position that the department's rejection of its application was a decision in a contested case and that jurisdiction was properly in the Court of Appeals, or that it presented an issue arising under the tax laws and that jurisdiction was therefore properly in the Tax Court. The department contended that jurisdiction was properly in the Circuit Court of Marion County, as a judicial review of an order in other than a contested case. ORS 183.484. On the parties' joint motion to determine the proper forum, ORS 14.165, the Appellate Commissioner determined that jurisdiction was properly in the Tax Court. On reconsideration, this court concluded that jurisdiction was properly in the Circuit Court of Marion County, as the court of residual jurisdiction.

asserted that the department had failed to act.[8] Petitioner asked the court to compel the department to issue final certified amount letters for the remaining final eligible project costs for its production and transfer facilities. As one alternative, petitioner asked the court to order the department to process its applications in accordance with the statutes and administrative rules in force in December 2009, and either to issue final certified amount letters or to issue a written notice of denial of the applications, along with a statement of findings and reasons for the denial. As another alternative, if the court determined that it did not have authority to compel the agency to act under ORS 183.490, petitioner sought a declaration under ORS 28.010 that it qualifies for energy tax credit certificates for the full amount of the remaining eligible project costs.

The department responded that petitioner's application had been rejected by operation of law, ORS 469.215(5), and that there was no authority, under either ORS 183.490 or ORS 28.010, for the court to order the department to take further action.

At a hearing on the parties' cross-motions for summary judgment, the court expressed frustration with the department's failure to respond to petitioner's applications. Concluding that the court had authority under ORS 183.490 to compel the department to act, the court ordered the department to issue the requested final certificates for each facility, *i.e.*, tax credits of $8,333,334. Further, deeming the department's position unreasonable, the court ordered the department to pay petitioner's attorney fees of $347,157.69, under either ORS 183.497 or ORS 182.090.

As a preliminary matter, we address whether the underlying controversy is now moot because, in its 2012 session, the Legislative Assembly enacted a new statute phasing out the business energy tax credit. This "sunset"

---

[8] Petitioner asserted that the department had unlawfully refused to act by: refusing to re-issue final certified amount letters to petitioner upon receipt of petitioner's application; refusing to process petitioner's application in accordance with agency rules and practice by failing to process the applications within 60 days; failing to provide a "completeness" review of the application as required by its administrative rule; and failing to provide petitioner with a statement and reasons for its rejection of the application.

enactment provides that "[a]ny preliminary certification issued for a facility *** that remains outstanding as of July 1, 2011, shall expire on July 1, 2014." ORS 315.357(2).[9] The department's administrative rule, OAR 330-090-0160(1)(b),

[9] ORS 315.357 provides:

"(1) For a facility other than a renewable energy resource equipment manufacturing facility, a taxpayer may not be allowed a credit under ORS 315.354 unless the taxpayer:

"(a) Files an application for preliminary certification under ORS 469B.145 on or before April 15, 2011;

"(b) Receives preliminary certification under ORS 469B.157 before July 1, 2011; and

"(c) Receives final certification under ORS 469B.161 before January 1, 2013, or has demonstrated, to the State Department of Energy, evidence of beginning construction before April 15, 2011.

"(2) Any preliminary certification issued for a facility, other than a renewable energy resource equipment manufacturing facility, under ORS 469B.157 that remains outstanding as of July 1, 2011, shall expire on July 1, 2014."

The department adopted OAR 330-090-0160 to implement the provisions of ORS 315.357. The administrative rule provides, in part:

"(1) ORS 315.357 contains the sunset of the Business Energy Tax Credit Program. Applicants must meet the deadlines that apply to their project:

"* * * * *

"(b) Applicants with a preliminary certification that are able to demonstrate evidence of beginning construction before April 15, 2011 must receive final certification before July 1, 2014. ***

"* * * * *

"(3) Transfer of tax credits issued to an applicant. In this section, a transferee means an individual or business that pays the pass-through amount to an applicant that has been issued the tax credit certificate, and receives a re-issued tax credit certificate in place of the original applicant.

"(a) An applicant who has been issued a tax credit certificate may transfer the tax credit to an eligible transferee through the department process provided by these rules, provided the transfer occurs within 24 months of the issuance of the original tax credit certificate and after the applicable sunset date for the related facility in ORS 315.357. Prior to the applicable sunset date for the related facility, applicants may use the pass-through to transfer their tax credit.

"(b) If an applicant uses any portion of the tax credit it may not be transferred, in accordance with ORS 469B.167(3). For the purposes of transferring the tax credit, a tax credit is considered used when any portion of the tax credit reduces or offsets any portion of the applicant's tax liability.

"(c) The department will provide assistance in locating a transferee, however the department does not guarantee that a transferee will be located or obtained.

"(d) A tax credit certificate may only be re-issued once, upon a transfer from the applicant to the transferee.

further provides that "[a]pplicants with a preliminary certification that are able to demonstrate evidence of beginning construction before April 15, 2011 must receive final certification before July 1, 2014." Petitioner had only preliminary certificates, which had been issued to Cascade Grain for its facilities, and no final certification. Because the circuit court's judgment ordering issuance of final certificates was stayed pending appeal, the department did not issue final certificates. Because petitioner's preliminary certificates have now expired and the July 1, 2014, deadline for obtaining final certification has passed, the department asserts that it may no longer issue final certificates and that the appeal is therefore moot.

Petitioner responds that, as agreed by the parties, their dispute is governed by the versions of the statutes in effect in 2009 and, therefore, the 2012 enactment should have no bearing on the controversy. Whatever version of the relevant statutory provisions is applicable to resolution of the underlying dispute, when an event occurs that "render[s] it impossible for the court to grant effectual relief," there is no justiciable controversy. *Hamel v. Johnson*, 330 Or 180, 184, 998 P2d 661 (2000) (quoting *Greyhound Park v. Ore. Racing Com.*, 215 Or 76, 79, 332 P2d 634 (1958)). A change in the law during an appeal results in the lack of a justiciable controversy when it alters the remedy available and makes a determination by this court of no practical effect on the rights of the parties. *Olson v. DLCD*, 220 Or App 77, 83, 184 P3d 1220 (2008).

For the reasons explained here, we conclude that the change in the law through the sunset of the business energy tax credit has made it impossible for the court to grant

"(e) A tax credit certificate may be re-issued in the name of the individual or entity transferee only.

"(f) The transferee may not claim the credit for a tax year prior to the year in which the transferee pays for the credit.

"(g) The applicant holding the tax credit certificate must submit a complete tax credit transfer application and the required fee to the department. ***

"(h) Upon compliance with this rule and any other applicable requirements, the department will re-issue the tax credit certificate to the transferee."

effectual relief. A preliminary certificate for the business energy tax credit is a prerequisite to the issuance of a final certificate. ORS 469.215(2).[10] By virtue of the sunset provision, which came into effect on July 1, 2014, while this appeal was pending, the preliminary certificates that were issued to Cascade Grain expired. Consequently, they no longer serve as the predicate for the issuance of final certificates or certified amount letters for the remaining balance of the certified eligible costs. Additionally, under OAR 330-090-0160, petitioner had to acquire its final certification by July 1, 2014, and that date has passed. Contrary to petitioner's contention, we do not understand ORS 315.357 or OAR 330-090-0160 to permit issuance of a final certificate after a preliminary certificate has expired or after July 1, 2014.[11] In view of the expiration of Cascade Grain's preliminary certificates and the passing of the July 1, 2014, deadline for obtaining final certification, the relief that petitioner sought and that the circuit court ordered in this action—the final certification of the tax credit—is not available, because the department has no statutory authority to issue the final certification.

The court's inability to grant the requested relief, however, does not necessarily render the appeal moot. As a general rule, a case is not justiciable if it becomes moot during judicial proceedings because of a court's inability to

---

[10] ORS 469.215 provided, in part:

"(1) A final certification may not be issued by the Director of the State Department of Energy under this section unless the facility was acquired, erected, constructed or installed under a preliminary certificate of approval issued under ORS 469.210 and in accordance with the applicable provisions of ORS 469.185 to 469.225 and any applicable rules or standards adopted by the director.

"(2) Any person may apply to the State Department of Energy for final certification of a facility:

"(a) If the department issued preliminary certification for the facility under ORS 469.210; and

"(b)(A) After completion of erection, construction, installation or acquisition of the proposed facility or, if the facility is a qualified transit pass contract, after entering into the contract with a transportation provider; or

"(B) After transfer of the facility, as provided in ORS 315.354(5)."

[11] Petitioner's contention is premised on the view that, because the statute and administrative rule do not explicitly prohibit issuance of final certificates after July 1, 2014, they implicitly permit it. But that argument runs contrary to OAR 330-090-0160(1)(a), (b), and (c), which contemplate issuance of a final certificate by July 1, 2014.

grant the requested relief. *See Hamel*, 330 at 184. If, however, "the court's decision in the matter will have some practical effect on the rights of the parties to the controversy," the case remains justiciable and will not be considered moot. *Brumnett v. PSRB*, 315 Or 402, 405, 848 P2d 1194 (1993). The circuit court in this case awarded attorney fees to petitioner based on its conclusions that it had the authority to address petitioner's challenge under ORS 183.490, that the department was required to provide the final certifications, that the department had acted without a reasonable basis in fact or in law, and that attorney fees were available under either ORS 182.090[12] or ORS 183.497(1)(b).[13] Although, as we have held, a change in the law pending appeal means that no relief can be ordered in the underlying controversy regarding petitioner's entitlement to the energy tax credit, we conclude that the department's challenge to the award of attorney fees prevents the appeal from becoming moot.

The Supreme Court's case law provides mixed guidance on how a court reviews an award of attorney fees on appeal when the underlying controversy is no longer justiciable. In *2606 Building v. MICA OR I Inc.*, 334 Or 175, 179 n 2, 47 P3d 12 (2002), the court addressed the merits of the underlying FED controversy, despite the fact that it had become moot, when the trial court's award of attorney fees depended on the correctness of the trial court's decision on the merits. The court held, citing *Pacific N. W. Dev. Corp. v. Holloway*, 274 Or 367, 546 P2d 1063 (1976), that, although the underlying FED dispute between the parties had dissolved due to the passage of time and the expiration of the lease underlying the dispute, the trial court's award of attorney fees as provided in the disputed lease agreement depended on the correctness of the trial court's judgment interpreting

---

[12] ORS 182.090(1) provides:

"In any civil judicial proceeding involving as adverse parties a state agency * * * and a petitioner, the court shall award the petitioner reasonable attorney fees and reasonable expenses if the court finds in favor of the petitioner and also finds that the state agency acted without a reasonable basis in fact or in law."

[13] ORS 183.497(1) provides that in a judicial proceeding, a court

"(b) Shall allow a petitioner reasonable attorney fees and costs if the court finds in favor of the petitioner and determines that the state agency acted without a reasonable basis in fact or in law[.]"

the lease and, therefore, preserved the justiciability of the underlying controversy. *See also Kay v. David Douglas Sch. Dist. No. 40*, 303 Or 574, 578, 738 P2d 1389 (1987), *cert den*, 484 US 1032 (1988) (the court noted in *dicta* that an award of attorney fees might prevent a case from becoming moot on appeal when the award depended on plaintiff's success on the merits); *cf. Kerr v. Bradbury*, 340 Or 241, 251, 131 P3d 737 (2006) (in the absence of a challenge to the award of attorney fees, that award could not support the continued justiciability of the action).

In contrast, in *Atiyeh v. State of Oregon*, 326 Or 531, 536, 956 P2d 177 (1998), the court reversed an award of attorney fees made on a judgment in which the underlying controversy had become moot, without addressing the merits of the underlying claim. In that case, the plaintiffs sought a declaratory judgment challenging the constitutionality of Ballot Measure 8, an initiative measure that had been approved by the people. The circuit court declared the measure unconstitutional and awarded attorney fees to the plaintiffs. Subsequently, pending appeal and in a different case, the Supreme Court invalidated Measure 8 on different grounds.[14] In *Atiyeh*, the court then determined that the appeal on the merits had become moot. 326 Or at 535. The court nonetheless reversed the award of attorney fees, explaining that, because the state could not challenge the correctness of the underlying judgment, it was inequitable to allow the award of attorney fees to stand. The court reasoned that, in light of the mootness of the appeal on the merits, the underlying basis for the award—the trial court's inherent equitable authority to award fees as described in *Deras v. Myers*, 272 Or 47, 535 P2d 541 (1975)—could not be tested. The court reversed the attorney fee award without reviewing the merits of the different underlying claims.[15]

---

[14] *Oregon State Police Officers' Assn. v. State of Oregon*, 323 Or 356, 918 P2d 765 (1996).

[15] The court explained that, in order to recover attorney fees under *Deras*, the prevailing party must have succeeded in "protecting the rights of others as much as his own." *Atiyeh*, 326 Or at 537 (quoting *Deras*, 272 Or at 66.) The court held that that requirement was not satisfied in the case, because the mootness of the underlying controversy had prevented the state from seeking a determination as to the correctness of the trial court's decision on the merits and, in that circumstance, it would not be equitable to permit the award of attorney fees to stand. The court further explained that, because the appeal had been cut short

Here, for the reasons that will become apparent, the correctness of the trial court's award of attorney fees does not depend on the correctness of its ruling on the merits; we therefore do not address the merits of the underlying controversy. Accordingly, we proceed directly to the question of petitioner's entitlement to attorney fees, which is a question of law that we review for legal error. *Barber v. Green*, 248 Or App 404, 410, 273 P3d 294 (2012).

In its petition for judicial review, petitioner sought attorney fees under ORS 183.497(1)(b).[16] The court based its award of attorney fees on *either* ORS chapter 182 or ORS chapter 183.[17] We address first the department's contention that ORS 183.497(1)(b) does not authorize an award of attorney fees. That statute provides:

"(1) In a judicial proceeding designated under subsection (2) of this section the court:

"* * * * *

"(b) Shall allow a petitioner reasonable attorney fees and costs if the court finds in favor of the petitioner and determines that the state agency acted without a reasonable basis in fact or in law[.] * * *

"(2) The provisions of subsection (1) of this section apply to an administrative or judicial proceeding brought by a petitioner against a state agency, as defined in ORS 291.002, for:

"(a) Judicial review of a final order as provided in ORS 183.480 to 183.484;

"(b) Judicial review of a declaratory ruling provided in ORS 183.410; or

by mootness, that prevented the court from concluding that the judgment "actually protects the rights of anyone." *Id.*

[16] The petition for judicial review did not seek attorney fees under ORS 182.090; petitioner did not raise that statute until it filed its petition for attorney fees.

[17] At a hearing on the petition for attorney fees, the court concluded that fees are appropriate under both ORS 183.497 and ORS 182.090:

"Well, you know, I've made a finding that the State acted without a reasonable basis in fact or law under both attorney's fees statutes, the 182 and 183, and I'll find attorney's fees appropriate under both. I guess I'll let the appellate courts work out which is the correct statute."

"(c)  A judicial determination of the validity of a rule as provided in ORS 183.400."

Attorney fees are available under ORS 183.497(1)(b) only in the judicial proceedings listed in ORS 183.497(2). *Lewis v. Beyer*, 262 Or App 486, 496, 325 P3d 59, *on recons*, 266 Or App 208, 338 P3d 715 (2014), *rev den*, 357 Or 299 (2015); *see Jordan v. SAIF*, 343 Or 208, 218, 167 P3d 451 (2007) (the legislature's omission of review of suspensions from the list of own-motion authority granted to the Workers' Compensation Board is "some indication" that the legislature intended to omit suspensions from the board's own motion authority); *Waddill v. Anchor Hocking, Inc.*, 330 Or 376, 382, 8 P3d 200 (2000) (the specification in ORCP 21 G(3) of three times at which a party may assert a defense indicates an intention to limit the times at which a party may raise the defense to those three and to make the defense otherwise unavailable). This is not one of the enumerated proceedings. It is not a petition for judicial review of an agency order, and petitioners do not seek review of the validity of a declaratory ruling or an administrative rule. Petitioner's action was brought under ORS 183.490. As we held in *Lewis*, 262 Or App at 497, a judicial review proceeding under ORS 183.490 is not a proceeding for which attorney fees are available under ORS 183.497(1)(b). We conclude, therefore, that the trial court erred in awarding fees under ORS 183.497(1)(b).

We move on to consider the department's contention that the trial court erred in awarding attorney fees under ORS 182.090. That statute provides:

"(1)  In any civil judicial proceeding involving as adverse parties a state agency * * * and a petitioner, the court shall award the petitioner reasonable attorney fees and reasonable expenses if the court finds in favor of the petitioner and also finds that the state agency acted without a reasonable basis in fact or in law.

"* * * * *

"(3)  As used in this section, 'civil judicial proceeding' means any proceeding, other than a criminal proceeding * * * conducted before a court of this state."

For several reasons, we agree with the department that ORS 182.090 does not provide a basis for attorney fees

in this case. First, as we have noted, 275 Or App at 513 n 16, the petition for judicial review did not request fees under ORS 182.090. That failure alone is reason enough to reverse the award. *Samuel v. Frohnmayer*, 308 Or 362, 369, 779 P2d 1028 (1989) ("If recovery of attorney fees is to be based on ORS 182.090, some notice in the form of pleaded facts will be necessary before a court can consider awarding them.").

Secondly, in cases such as this brought under the APA, the case law is clear that the exclusive authority for the award of attorney fees is ORS 183.497. *Stelljes/Dumler v. State Board of Parole*, 307 Or 365, 368, 769 P2d 177 (1989); *see also Executive Department v. FOPPO*, 94 Or App 754, 757, 767 P2d 112 (1989) ("Attorney fees in APA cases are generally governed by ORS 183.497[.]"). Not a single decision of this court or the Supreme Court in a judicial review proceeding under the APA has awarded attorney fees under ORS 182.090. In *Donnell v. Eastern Ore. State College*, 64 Or App 271, 275, 668 P2d 423, *rev den*, 296 Or 120 (1983), we explicitly considered and rejected the contention that ORS 182.090 provides an independent source for an award of attorney fees in a proceeding under the APA, concluding that "ORS 182.090 has no application to judicial review of agency actions under the APA." We adhered to that conclusion in *White v. Employment Div.*, 77 Or App 35, 38 n 3, 711 P2d 196 (1985).

Finally, our own contextual analysis of ORS 182.090 persuades us that it does not apply in the context of an APA proceeding. It is true, as petitioner points out, that ORS 182.090(1) states that it applies "[i]n any civil proceeding." ORS 182.090(3) defines a "civil judicial proceeding" as "any proceeding, other than a criminal proceeding * * * conducted before a court of this state." As a pure textual matter, that definition would appear to encompass judicial review proceedings under the APA. In *Donnell*, we rejected the argument that judicial review under the APA is a "civil judicial proceeding," 64 Or App at 274, without explicitly discussing the definition. We understand why, therefore, petitioner contends that *Donnell* does not provide a satisfactory resolution to the textual interpretation.[18] But, as a contextual matter,

---

[18] *Donnell* was one of several opinions decided on the same day attempting to provide a comprehensive resolution to statutory construction issues on attorney

we are persuaded that *Donnell* is correct. ORS 183.497 explicitly sets forth the types of proceedings under the APA for which attorney fees are authorized when an agency has acted without a reasonable basis in fact or law and, as we have concluded, a proceeding under ORS 183.490 is not among them. The omission of ORS 183.490 from the categories of cases for which attorney fees are available under ORS 183.497 is assumed to have been purposeful and indicates an intention not to award fees in those types of cases. *Jordan,* 343 Or at 218. If ORS 182.090 were also to apply to proceedings under the APA, it would render ORS 183.497 superfluous.

We have reviewed the sparse legislative history that exists regarding the enactment of ORS 182.090 and ORS 183.497, and it supports our conclusion in *Donnell* that the legislature intended that ORS 183.497 apply to judicial review proceedings under the APA and that ORS 182.090 apply to all other civil proceedings in which an agency is a party. We conclude that the circuit court erred in determining that petitioner was entitled to attorney fees under ORS 182.090.[19]

In light of our conclusion that the underlying controversy has become moot as a result of the sunset of the business energy tax credit, we conclude that it is appropriate to vacate the circuit court's judgment directing the department to issue final certification for more than $8 million in energy tax credits. *Kerr v. Bradbury,* 340 Or 241, 131 P3d 737 (2006) ("'A party who seeks review of the merits of an adverse ruling, but is frustrated ([when the case becomes moot] by the vagaries of circumstance), ought not in fairness be forced to acquiesce in the judgment.'" (Quoting with approval *U.S. Bancorp Mortgage Company v. Bonner*

---

fees petitions in cases brought under the APA. *See Wasson v. AFSD,* 64 Or App 288, 668 P2d 426 (1983); *Johnson v. Employment Division,* 64 Or App 276, 668 P2d 416, *rev den,* 296 Or 120 (1983); *Baptist v. Adult & Family Services Div.,* 64 Or App 265, 668 P2d 428 (1983); *Griffin v. Employment Division,* 64 Or App 260, 668 P2d 430 (1983).

[19] In light of our conclusion that neither ORS 183.497 nor ORS 182.090 is applicable to a proceeding under ORS 183.490, we need not address whether the trial court erred in determining that the department acted without a reasonable basis in fact or law in rejecting petitioner's application for final certification.

*Mall Partnership*, 513 US 18, 24-25, 115 S Ct 386, 130 L Ed 2d 233 (1994).)).

Judgment requiring issuance of final certification vacated; award of attorney fees reversed.