Argued and submitted May 20, 2014, reversed and remanded
December 30, 2015

SIF ENERGY, LLC,
an Oregon limited liability company,
*Petitioner-Appellant,*

*v.*

STATE OF OREGON,
by and through its Department of Energy,
and Bob Repine,
in his official capacity as Director of the
Oregon Department of Energy,
*Respondents-Respondents.*

Linn County Circuit Court
102273; A150875

365 P3d 664

Frederick A. Batson argued the cause for appellant. With him on the opening brief were Dan Webb Howard and Gleaves Swearingen Potter & Scott LLP. With him on the reply brief was Gleaves Swearingen LLP.

Stephanie L. Striffler, Assistant Attorney General, argued the cause for respondents. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

This case concerns the proper amount of tax credit that petitioner should have received for its renewable energy facility under Oregon's business energy tax credit program. A business energy tax credit is calculated based on the "certified cost" of constructing such a facility, as determined by the Oregon Department of Energy. Petitioner built a renewable energy facility for which it was eligible for a business energy tax credit. Although petitioner's actual construction cost was more than its estimated cost, the department used the estimated cost as the certified cost for tax credit purposes. Petitioner challenged that cost certification order in the circuit court, and it now appeals a judgment affirming the department's order. Petitioner argues that, by statute, the department was required to certify all of petitioner's actual, eligible costs, up to 110 percent of the estimated cost. The department has interpreted the statute differently; it contends that the statute granted the agency discretion to certify any amount of actual, eligible costs between 100 and 110 percent of petitioner's estimated cost. We conclude that the statute required the department to certify all of petitioner's actual, eligible costs, up to 110 percent of the estimated cost; therefore, the trial court erred in affirming the department's cost certification order. Accordingly we reverse and remand.

## I. BACKGROUND

A business energy tax credit is a credit against Oregon income taxes based on the "certified cost" of capital investments in areas such as renewable energy resources. ORS 315.354. For a taxpayer to claim the credit, the Director of the Oregon Department of Energy must issue "final certification" of a facility after the investment is completed, which establishes eligibility for the credit. *Former* ORS 469.215 (2009), *renumbered as* ORS 469B.161 (2011);[1] ORS 315.354. Applying for the requisite final certification is a two-step process. First, the owner of a facility must apply for a "preliminary certificate," by submitting a project description and

---

[1] Unless otherwise noted, all references in this opinion are to *former* ORS 469.185 to 469.225 (2009), the version of the business energy tax credit statutes applicable at all times relevant to this case. The statutes have since been amended and renumbered to ORS 469B.130 to 469B.171.

cost estimate to the department. ORS 469.205(1), (2)(b), (d). If the department approves the project, it issues a preliminary certification that approves the amount of project costs eligible for a business energy tax credit. ORS 469.210(2); OAR 330-090-0130(3)(b)(A). Second, once the project is completed, the owner of the facility must apply for the final certification, by submitting, among other things, verification from a certified public accountant (CPA) of the "actual cost" of the project. ORS 469.215(2) - (3).

Then, before the owner can receive a tax credit, the department must "certify the facility," ORS 469.215(6); ORS 315.354, an action that includes "certification of the actual cost of the facility," ORS 469.215(4). "However, the director may not certify an amount for tax credit purposes which is more than 10 percent in excess of the amount approved in the preliminary certificate issued for the facility." ORS 469.215(4). This case centers on the interaction between those final certification procedures and concerns the department's certification obligations when the actual cost of constructing a facility is more than the estimated cost.

The facts in this case are undisputed. In 2008, the department issued a preliminary certification for petitioner's biogas facility, approving $8,879,962 in projected construction costs. Petitioner completed its facility in 2009 and submitted its application for final certification. That application contained the required CPA verification of petitioner's actual construction costs, which were $11,098,501. Thus, petitioner's claimed actual construction costs were $2,218,539—or about 25 percent—more than petitioner's estimated costs.

When petitioner submitted its 2009 application for final certification, the department's administrative rule provided that a final certification "may be up to 10 percent more than the amount approved in the preliminary certification." *Former* OAR 330-090-0130(9)(b)(A) (June 20, 2008). However, while petitioner's application for final certification was pending, the department promulgated temporary rules deleting that provision. *See former* OAR 330-090-0133(1) (Nov 3, 2009) (preserving final certification process rule but eliminating cost overrun provision). The new rules were

made applicable to all pending applications and future applications, for which no final certification determination had been made. *Former* OAR 330-090-0105(3) (Nov 3, 2009).

The department finally certified petitioner's facility in 2010, using petitioner's estimated cost of $8,879,962 to calculate petitioner's tax credit. Petitioner requested that the agency reconsider that amount, asserting that ORS 469.215(4) compelled the agency to calculate petitioner's tax credit by using $9,767,958.20—110 percent of the petitioner's approved estimated cost. The department denied the request, explaining that it had "discontinued the practice of issuing a tax credit for more than the pre-certified amount" when it promulgated the temporary rules in 2009.

Petitioner sought review of the department's order in the circuit court, pursuant to ORS 183.484 (providing jurisdiction for judicial review of orders in other than contested cases), and both parties filed cross-motions for partial summary judgment. The court granted partial summary judgment for the department and denied it for petitioner, in effect affirming the department's order and concluding that "the law and OAR in effect at the time of submission clearly *** provided that discretion would be allowed in determining whether or not a cost overrun would be considered for the tax credit."

## II. ANALYSIS

On appeal, petitioner raises three assignments of error concerning the court's grant of the department's motion for summary judgment and denial of petitioner's own motion on its petition for review in the circuit court. The dispositive legal issue, however, is whether ORS 469.215(4) conferred discretion upon the department to finally certify, for tax credit purposes, petitioner's actual, eligible costs in an amount less than 110 percent of the preliminarily certified amount. Because we agree with petitioner that it did not, we do not reach petitioner's other arguments.[2]

___

[2] Our recent decision in *Cascade Kelly Holdings, LLC v. Dept. of Energy*, 275 Or App 500, 365 P3d 603 (2015), also concerned certification under the 2009 version of the business energy tax credit statutes. In that case, we held that the underlying controversy was moot, in light of the legislature's 2012 enactment of ORS 315.357(2), a "sunset" provision phasing out the business energy tax credit. *Id.* at 509-11. That sunset enactment provides that "[a]ny preliminary certification issued for a facility *** that remains outstanding as of July 1, 2011, shall

On appeal from summary judgment, we "review the evidence and all reasonable inferences in the light most favorable to the nonmoving party and determine whether the moving party is entitled to judgment as a matter of law. In the case of cross-motions for summary judgment, we determine which party is entitled to judgment as a matter of law." *Powell v. Bunn*, 185 Or App 334, 338, 59 P3d 559 (2002), *rev den*, 336 Or 60 (2003) (internal citations omitted). In determining whether either party was entitled to judgment as a matter of law, we must review the court's judgment to determine whether it correctly assessed the department's actions under ORS 183.484(5), which provides the standards for judicial review of an order in other than a contested case. *G.A.S.P. v. Environmental Quality Commission*, 198 Or App 182, 187, 108 P3d 95, *rev den*, 339 Or 230 (2005). "In practical effect, that means that we directly review the agency's order for compliance" with those standards. *Id.* Those standards provide, relevant to this case, that a reviewing court

"(a) * * * may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:

"(A) Set aside or modify the order; or

"(B) Remand the case to the agency for further action under a correct interpretation of the provision of law.

"(b) The court shall remand the order to the agency if it finds the agency's exercise of discretion to be:

"(A) Outside the range of discretion delegated to the agency by law;

"(B) Inconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency; or

"(C) Otherwise in violation of a constitutional or statutory provision."

ORS 183.484(5).

---

expire on July 1, 2014." ORS 315.357(2). Because the department issued petitioner's final certification in 2010, the sunset enactment does not affect the justiciability of this appeal.

Fundamentally, the parties disagree over the meaning of ORS 469.215(4), which concerned the department's issuance of a final certificate, and provided, in relevant part:

"The director shall act on an application for certification before the 60th day after the filing of the application under this section. The director may issue the certificate together with such conditions as the director determines are appropriate to promote the purposes of [the business energy tax credit program]. * * * *The action of the director shall include certification of the actual cost of the facility. However, the director may not certify an amount for tax credit purposes which is more than 10 percent in excess of the amount approved in the preliminary certificate issued for the facility.*"[3]

(Emphasis added.) Petitioner argues that, in light of the statutory direction that the "action of the director shall include certification of the actual cost of the facility," the following sentence required the department to certify all actual, eligible costs, up to 110 percent of the amount approved in the preliminary certificate. The department argues that, instead, the phrase "may not certify an amount *for tax credit purposes*" gave the department discretion to certify any amount of actual, eligible costs, between 100 and 110 percent of the amount approved in the preliminary certificate. (Emphasis added.) The department views "certification of the actual cost" and certification "for tax credit purposes" as two separate steps, and the circuit court agreed with that interpretation.

The interpretation of a statute is a question of law, and we review the court's interpretation for legal error. *State v. Thompson*, 328 Or 248, 256-57, 971 P2d 879, *cert den*, 527 US 1042 (1999). In interpreting the statute at issue, our ultimate goal is to discern the legislature's intent and, to the extent possible, give effect to that intent. ORS 174.020; *State*

---

[3] The specific text at issue on review has since been amended to read, "However, the director may not certify an amount for tax credit purposes that is more than the amount approved in the preliminary certificate issued for the facility." *See* ORS 469B.161(4) (2013); Or Laws 2010, ch 76, § 12(4) (amending ORS 469B.161(4)). As the parties recognize, subsequent legislative enactments do not aid our interpretation of a statute. *See DeFazio v. WPPSS*, 296 Or 550, 561, 679 P2d 1316 (1984) ("The views legislators have of existing law may shed light on a new enactment, but [are] of no weight in interpreting a law enacted by their predecessors.").

*v. Gaines*, 346 Or 160, 165, 206 P3d 1042 (2009). We interpret the text of the statute in context and examine available legislative history, to the extent that it is helpful in discerning legislative intent. *Gaines*, 346 Or at 172-73.

A.  *Text and Context of ORS 469.215(4)*

We begin our analysis with the text and context of the statute. Both petitioner and the department offer plausible readings of the statutory text; however, we ultimately agree with petitioner's interpretation. Based on the statutory text and context, we conclude that ORS 469.215(4) required the department to certify all actual, eligible costs, up to 110 percent of the amount approved in the preliminary certificate for three reasons.

First, from a grammatical standpoint, the last sentence of ORS 469.215(4), beginning, "[h]owever, the director * * *," is most naturally read as a limitation on the preceding sentence, which mandates that the director certify actual costs. In this context, "however" is an adverb meaning "in spite of that : on the other hand : BUT." *Webster's Third New Int'l Dictionary* 1097 (unabridged ed 2002). An adverb typically modifies the verb phrase that immediately follows it— here, "may not certify." *See State v. Christian*, 354 Or 22, 28-29, 307 P3d 429 (2013) (construing adverb "recklessly" to modify the phrase immediately following it). The word "however" indicates that the director's first action ("shall" certify actual costs) is linked to the director's second action ("may not certify * * * for tax credit purposes"). Stated another way, the statute directs that, in spite of the director's obligation, as a general rule, to certify actual costs, a different rule applies when actual costs exceed 110 percent of the preliminary estimate. That reading indicates that certification "for tax credit purposes" is not a freestanding, independent second calculation, as the department argues, but that it is a sub-step of the director's mandatory cost certification action, in certain circumstances. In addition, the phrase "certify for tax credit purposes" does not appear anywhere else in the business energy tax credit statutes, which supports our interpretation that the term is limited to the cost overrun situation and does not refer to a second, "certification for tax credit purposes" step that is generally applicable.

Second, the phrase "may not certify" is more convincingly construed to be an absolute limitation on the director's certification of actual costs, rather than an implied grant of discretion to the director to secondarily calculate a certified cost for tax credit purposes. As noted, that is partially because the word "however" links the "may not certify" action to the "shall certify" action. As well, it is because of the specific meaning of "may not certify" in legislative drafting. Both parties agree, as do we, that the phrase "may not certify" places an express limit on the director's authority to act. "May not" is an "expression[] of an absolute prohibition." ORS 174.100(4); *see* Office of Legislative Counsel, *Bill Drafting Manual* § 4.3 (2014) (noting that, "[a]lthough ORS 174.100(4) makes 'shall not' and 'may not' equivalent expressions of prohibition, the office has a strong preference for 'may not'"); *see also Burke v. DLCD*, 352 Or 428, 436, 290 P3d 790 (2012) (looking to the *Bill Drafting Manual* for interpretive guidance); *cf. Friends of Columbia Gorge v. Columbia River (S055915)*, 346 Or 415, 426-27, 212 P3d 1243 (2009) (construing permissive nature of "may").

The department, however, argues that the express limit impliedly gives the director discretion to act, so long as he or she does not violate the express prohibition. In the department's view, if the legislative assembly had intended to mandate that the director certify all costs up to 110 percent, the drafters would have used the verb "shall." We disagree with that reading of "may not certify," because it inverts the presumption that agencies do not have authority unless statutorily provided. *See City of Klamath Falls v. Environ. Quality Comm.*, 318 Or 532, 545, 870 P2d 825 (1994) (agencies are creatures of statute, and they derive their discretionary authority, like all of their authority, from statutory grants and general laws affecting administrative bodies).[4]

---

[4] For that reason, we are not persuaded by the department's reliance on other parts of the business energy tax credit statutes authorizing the department to promulgate rules governing the application process. *See, e.g.*, ORS 469.215(1) ("A final certification may not be issued" unless the facility was constructed in accordance with "any applicable rules or standards adopted by the director."). The agency must exercise its rulemaking authority consistently with the business energy tax credit statutes, and, therefore, that general rulemaking authority is not a general grant of discretion to adopt rules contrary to the statutory text. *See Garrison v. Dept. of Rev.*, 345 Or 544, 548-49, 200 P3d 126 (2008) (agency cannot,

As multiple other parts of the business energy tax credit statutes indicate, the legislative assembly knows how to affirmatively grant the department discretion. *See, e.g.,* ORS 469.200(2) ("the director may certify a lesser amount"); ORS 469.205(3) ("[t]he director may refund the fee"); ORS 469.205(4) ("[t]he director may allow an applicant to file the preliminary application"); ORS 469.210(1) ("[t]he Director * * * may require the submission of plans"); ORS 469.225(1) ("the Director * * * may order the revocation of the certificate"). *See generally* Office of Legislative Counsel, *Bill Drafting Manual* § 4.3 (discussing use of "may" to authorize discretion). Most compellingly, ORS 469.215(4) itself distinguishes between mandatory and discretionary actions by selectively using "shall" and "may": The director *"shall"* finally certify the actual cost of the facility, but *"may"* issue the certificate together with such conditions as the director determines are appropriate to promote the purposes of" the business energy tax credit statutes. ORS 469.215(4) (emphases added). The department asserts that, if the legislature had intended to use actual costs as the "certified cost," "the legislature could have clearly said so, by stating, for example, 'the Director *shall* certify for tax credit purposes the amount of actual costs, up to 10 percent in excess of the amount approved in the preliminary certificate.'" (Emphasis added.) We agree that that would have been another way to write the statute. *See* Office of Legislative Counsel, *Bill Drafting Manual* § 4.3 (directing legislative drafters, "[t]o impose an obligation to act, use 'shall'"). However, the legislature's failure to unambiguously state that the agency *must* do something does not necessarily imply that its intent was that the agency *may* do it.

Third, the regulatory structure of the business energy tax credit statutes, as a whole, indicates that certification "for tax credit purposes" is a step related to certification of actual costs, rather than an independent calculation. As discussed, application for a final certificate is a two-step process. At the front end, applicants apply for a preliminary certification. ORS 469.205. At that point, applicants notify the department as to estimated costs and project

by administrative rule, "amend, alter, enlarge upon, or limit statutory wording so that it has the effect of undermining the legislative intent").

specifications, ORS 469.205(2)(b), (d), and the department has an opportunity to accept or deny those applications; *see* ORS 469.210(2) ("If the director determines that the proposed [project] is technically feasible * * * and is in accordance with the provisions of ORS 469.185 to 469.225 and applicable rules or standards * * *, the director shall issue a preliminary certificate approving" the project.). After construction, the department issues—or declines to issue—a final certificate, an action that "shall include certification of the actual cost of the facility." ORS 469.215(4). In part, the statutes give the department express discretion to "certify" less than the full cost of certain renewable energy investments, "[n]otwithstanding" a provision capping overall preliminary certifications for those renewable energy projects at $40 million annually, if specific "conditions exist *at the time of the preliminary certification.*" ORS 469.200(1)(b), (2) (emphasis added). In contrast, the statutes do not expressly give the department discretion to certify a lesser amount, based on conditions that occur after the preliminary certification. That discrepancy, too, suggests that the department does not have general discretion at other points in the certification process.

B. *Legislative History of ORS 469.215(4)*

The legislative history of the business energy tax credit program bolsters our interpretation that ORS 469.215(4) limits a mandatory duty, rather than grants the agency discretion. First, the legislative history demonstrates that the legislature intended the 10 percent cost overrun provision to be an adjunct to the total annual limit on the amount of tax credits available. Second, the legislative history demonstrates legislative intent to provide certainty for investors, a goal that petitioner's interpretation furthers more effectively than the department's does.

When the business energy tax credit program was initially being considered, some legislators were concerned about the program's potential fiscal impacts. *See, e.g.*, Tape Recording, House Committee on Environment and Energy, HB 2843 and HB 3128, May 17, 1979, Tape 24, Side 1 (statements of Rep Thoop, Rep Schoon, and Rep Fawbush). As a result, many of the provisions in HB 2843, the bill ultimately

enacted as the business energy tax credit program, were included to rein in the overall credits available to investors. *See, e.g.*, Tape Recording, House Committee on Environment and Energy, HB 2843 and HB 3128, May 22, 1979, Tape 24, Side 2 (discussing purpose of committee amendments to HB 2843).

For example, in section 5 of the original 1979 Act, the legislative assembly capped the aggregate facility costs that the department could certify annually:

"(1)   The total of all costs of energy conservation facilities certified by the director for tax credits in any calendar year shall not exceed $30 million. If the applications exceed the $30 million limit, the director, in his discretion, shall determine the dollar amount certified for any facility and the priority between applications for certification based upon the criteria contained in sections 2 to 10 of this 1979 Act.

"(2)   Not less than $5 million of the $30 million annual certification limit shall be allocated to facilities having a certified cost of $100,000 or less for any facility.

"(3)   With respect to the balance of the annual certification, the maximum cost certified for any facility shall not exceed $10 million. However, if the applications certified in any calendar year do not total $25 million, the director, in his discretion, may increase the certified costs above the $10 million maximum for previously certified facilities. Such increases shall be allocated according to the director's determination of how the previously certified facilities meet the criteria of sections 2 to 10 of this 1979 Act. * * *"

Or Laws 1979, ch 512, § 5. Those capping provisions in section 5 were intended to limit the overall fiscal impact of the business energy tax credit program and to ensure that no single large project could consume all of the available credits. Tape Recording, House Revenue Committee, HB 2843, June 1, 1979, Tape 41, Side 1 (statement of Dave Philbrick, Oregon Department of Energy) (explaining each section of the bill to the committee). To implement those goals, section 5 granted the department discretion to certify less than actual costs under certain circumstances related to overall program costs. In the event "the applications exceed the $30 million limit, the director, *in his discretion,* shall

determine the dollar amount certified for any facility and the priority between applications for certification based upon the criteria" in the Act. Or Laws 1979, ch 512, § 5(1) (emphasis added). But, if the applications certified in any year did not total $25 million, the director "in his discretion" could "increase the certified costs above the $10 million maximum for previously certified facilities." *Id.* § 5(3).

Next, section 8 of the 1979 Act included the same 10 percent cost overrun cap at issue in this case, although it expressed the limitation slightly differently:

> "The director shall act on an application for certification before the 60th day after the filing of the application under this section. The action of the director shall include certification of the actual cost of the facility. However, *in no event shall* the director certify an amount for tax credit purposes which is more than 10 percent in excess of the amount approved in the preliminary certificate issued for the facility."

*Id.* § 8(4) (emphasis added). As the legislative history explains, that provision was intended to support the overall program caps in section 5. As Dave Philbrick, from the department, explained to the House Revenue Committee,

> "[t]he final certification cannot be * * * in excess of 10 percent of the amount approved under the [preliminary] certification. *This is important largely because of the $30 million limit * * * [. S]omebody coming in for the * * * [preliminary] certification could expect at most 10 percent more than [the amount preliminarily certified]."

Tape Recording, House Revenue Committee, HB 2843, June 1, 1979, Tape 41, Side 1 (statement of Dave Philbrick, Oregon Department of Energy) (emphasis added). Thus, the 1979 Act contemplated that, in some cases, the department would certify, for tax credit purposes, an amount less than the actual facility cost. *See also* Or Laws 1979, ch 512, § 8(5) ("[i]f the director * * * certifies a lesser actual cost of the facility than was claimed in the application * * *"). Critically, though, the department's discretion to certify less than actual facility costs was triggered by the total annual program limits and express grants of discretion in section 5, rather than the 10 percent cost overrun provision in section 8.

Section 8 was codified in ORS 469.215(4) (1979). In 2008, the legislative assembly changed the disputed text from "in no event shall the Director certify an amount" to "the director may not certify an amount." Or Laws 2008, ch 29, § 4(4). That amendment appears to be a stylistic revision. *See* Office of Legislative Counsel, *Bill Drafting Manual* § 4.3 (noting that, "[a]lthough ORS 174.100(4) makes 'shall not' and 'may not' equivalent expressions of prohibition, the office has a strong preference for 'may not'"). The department does not provide legislative history, and we are aware of none, suggesting that the amendment was worded to convey new discretionary authority upon the director. Therefore, we read ORS 469.215(4) consistently with its historical function in the statutory scheme, and not as a freestanding grant of discretion to calculate an amount "for tax purposes."

In addition to being consistent with the historical structure of the business energy tax credit statutes, petitioner's interpretation furthers the twin legislative purpose of providing certainty for investors. *See generally* Tape Recording, House Revenue Committee, HB 2843, June 1, 1979, Tape 41, Side 1 (discussing need for investor certainty). The business energy tax credit program was designed to incentivize investment in alternative energy technologies, which involves many unknown variables. *See, e.g., id.*; Or Laws 1979, ch 512, § 2 (stating that "it is the policy of the State of Oregon to encourage the conservation of electricity, petroleum and natural gas by providing tax relief for Oregon facilities that conserve energy resources"). And, in order for such an incentive to work, businesses needed to be able to rely on actually receiving the tax credit after making a substantial capital investment. *See, e.g.*, Tape Recording, House Committee on Environment and Energy, HB 2843 and HB 3128, May 17, 1979, Tape 24, Side 1 (statements of Rep Fawbush and Rep Schoon). Legislators debated, at length, how businesses would apply for the tax credit, whether applicants preliminarily certified would receive the credit if their renewable energy technologies were ultimately less effective than anticipated, and how the department would choose among applications at the preliminary certification stage. *See id.* As previously discussed, the legislature ultimately resolved those concerns by guiding the department's

exercise of discretion in choosing among competing applications when the program's overall costs were at issue. *See* Or Laws 1979, ch 512, § 5(1).

In light of that legislative history, petitioner's interpretation better promotes the purposes of ORS 469.215(4). The preliminary certification process, which requires the department to certify eligible projected costs before an applicant invests in a project, provides certainty for both the applicant and the agency. If the applicant complies with the conditions of the preliminary certification, the applicant can expect to receive a tax credit based on its actual investment, up to a point. And, the agency can plan for the fiscal impact of that tax credit by evaluating projected costs for legitimacy, and by choosing which projects to preliminarily certify based on their feasibility and other statutory and regulatory criteria. *See* ORS 469.210(2). But the department's interpretation introduces *uncertainty* into that process, because it allows the agency to decide, after the fact and without clear guidelines, whether some cost overruns should be certified, while others are not. That reading is inconsistent with the purposes of the business energy tax credit program, and we do not believe that it is what the legislature intended.

Because ORS 469.215(4) mandated that the department certify petitioner's actual, eligible costs up to 110 percent of the preliminary estimate, petitioner was entitled to judgment as a matter of law on that theory. Accordingly, the court incorrectly applied the standards at ORS 183.484(4) when it affirmed the department's order, and it erred by granting partial summary judgment to the department and denying partial summary judgment to petitioner.

Reversed and remanded.