EGAN, C.J.
*196 Claimant seeks review of an order of the director of the Department of Business and Consumer Services (the department) upholding SAIF's determination that she is not entitled to vocational assistance for her compensable work injury. The facts are not in dispute, and the only issue presented on judicial review is a question of statutory construction. We review the director's order for legal error, ORS 183.482(8), conclude that the director erred, and therefore reverse and remand.
In October 2010, claimant worked one day per week as a bartender/server at employer's restaurant, where she slipped and fell on a wet floor and injured her left arm and wrist, requiring surgery. Claimant's pay at the restaurant was minimum wage plus tips. SAIF, employer's workers' compensation insurance carrier, accepted a disabling claim for three conditions. At the time of her injury, claimant also worked for two other employers: She worked full time as a jewelry salesperson for Fred Meyer and part time as a lead generator for American Family Insurance.
Claimant lost time from all three of her jobs because of her injury.[1] As a result, her benefits for temporary disability were calculated based on a weekly wage determined "by adding all earnings the worker was receiving from all subject employment." ORS 656.210(2)(a)(B).[2] Over the course of *197 the *70 claim, claimant received temporary total and temporary partial disability benefits based on her wages from all three jobs.
Claimant's injury became medically stationary and, in December 2013, claimant's physician released her to regular work at the restaurant and at Fred Meyer, with a lifting restriction of five to 10 pounds on the left arm. Claimant was able to return part-time to her work at Fred Meyer, with accommodations. But employer could not accommodate claimant's work restrictions, so she could not return to work at the restaurant. Thus, as required by ORS 656.340 (1)(b), SAIF referred claimant for an evaluation for vocational assistance.
ORS 656.340(6) sets forth the requirements for eligibility for vocational assistance:
"A worker is eligible for vocational assistance if the worker will not be able to return to the previous employment or to any other available and suitable employment with the employer at the time of injury or aggravation, and the worker has a substantial handicap to employment."
Thus, eligibility for vocational assistance requires that the worker (1) be unable to return to the worker's previous or other suitable employment with the employer, and (2) have a "substantial handicap to employment."
A "substantial handicap to employment" exists when the worker lacks the necessary physical capacity, knowledge, or skill to be employed in "suitable employment." ORS 656.340(6)(b)(A). The ability to be employed in "suitable employment" is determined based on a comparison of the weekly wage from the worker's potential employment and the weekly wage from the worker's regular employment at the time of injury. ORS 656.340(6)(b)(B)(iii) provides that a *198 worker who is able to work at "[e]mployment that produces a weekly wage within 20 percent of that currently being paid for employment that was the worker's regular employment" is capable of being employed in "suitable employment." ORS 656.340(5), in turn, defines "regular employment" as "the employment the worker held at the time of the injury[.]"[3]
A vocational assistance counselor evaluator determined that claimant was not eligible for vocational assistance, because she could be employed at a weekly wage within 20 percent of her $100.80 weekly wage at employer's restaurant, the job at injury. Based on the counselor's report, SAIF determined that claimant did not qualify for vocational assistance, and the director upheld that determination.[4]
Claimant seeks judicial review, contending that the director erred in basing the evaluation of "suitable employment" on claimant's weekly wage from only her earnings at employer's restaurant, rather than claimant's earnings from all of her employers at the time of the injury. The dispute turns on the meaning of the definition of "regular employment" in ORS 656.340(5). The question is one of statutory construction that we review for legal error under the analytical template provided by State v. Gaines , 346 Or. 160, 171, 206 P.3d 1042 (2009), and PGE v. Bureau of Labor and Industries , 317 Or. 606, 859 P.2d 1143 (1993).
*71 We begin with the statutory text. As noted, ORS 656.340(5) defines "regular employment" as "the employment the worker held at the time of the injury[.]" SAIF contends that, in choosing to define "regular employment" in the singular-"employment"-the legislature has expressed an intention that the worker's "regular employment" as defined in ORS 656.340(5) refers to the particular job the worker was engaged in at the time of injury. SAIF argues that if the intention had been to consider wages from all of the worker's employers at the time of injury, the legislature would have used the plural form, "employments." SAIF further argues that the presence of the definite article "the"
*199 to modify "employment" connotes something specific, which SAIF interprets as the specific employment at the time of injury. See, e.g. , State v. Lykins , 357 Or. 145, 159, 348 P.3d 231 (2015) ("As a grammatical matter, the definite article, 'the,' indicates something specific, either known to the reader or listener or uniquely specified.").
SAIF's textual construction is plausible. It might even be persuasive, if not for the fact that, depending on the context in which it is used, the term "employment" can readily refer to multiple jobs. See, e.g. , ORS 656.210 (2)(a)(B) (when the worker has more than one job at the time of injury, the weekly wage for purposes of determining benefits for temporary disability is to be calculated "by adding all earnings the worker was receiving from all subject employment " (emphasis added) ). Additionally, although a definite article can, grammatically, indicate something specific or uniquely specified, as the Supreme Court said in Wyers v. American Medical Response Northwest, Inc. , 360 Or. 211, 224-25, 377 P.3d 570 (2016), the use of the definite article "is not always, so to speak, definitive. *** Its use in context may reveal an intention to encompass less categorically specific referents." Id. (Citation omitted.) From a grammatical standpoint, in the context in which it is used in ORS 656.340(5), "the employment the worker held at the time of injury" is specific to the employment "the worker held," and readily susceptible to a construction that encompasses the aggregate of the worker's remunerative employment at the time of the injury.
Context confirms that construction. The definition of "regular employment" in ORS 656.340(5) applies to ORS 656.340(5) and (6). ORS 656.340(5) includes the legislature's statement that the objective of vocational assistance is "to return the worker to employment which is as close as possible to the weekly wage currently being paid for employment which was the worker's regular employment." That statement does not include the definite article "the" before "employment" or any other textual indication that, when a worker has more than one job, only the job at injury is to be considered "regular employment" in meeting the objective of returning the worker to employment at a wage that is as close as possible to the wage at the worker's "regular *200 employment." Claimant's regular employment at the time of the injury included all of her jobs, not just the restaurant job.
One purpose of workers' compensation benefits is to compensate workers "who are active in the labor market, for wages lost because of inability (or reduced capacity) to work as a result of a compensable injury." Welliver Welding Works v. Farmen , 133 Or. App. 203, 210, 890 P.2d 429 (1995) (quoting Cutright v. Weyerhaeuser Co. , 299 Or. 290, 296, 702 P.2d 403 (1985) ). It would be inconsistent with that purpose, as well as the policy expressed in ORS 656.340(5), to conclude that a worker with more than one job who is disabled by a compensable injury is ineligible for vocational assistance because the worker is able to maintain employment at earnings within 20 percent of earnings of one part-time job. Here, claimant's "regular employment" at the time of her injury was not only her one-day-per-week job at the restaurant; rather, it consisted of three jobs. The remuneration from those three jobs provided the basis for the determination of claimant's weekly wage for purposes of determining her temporary disability benefits, ORS 656.210(2)(a)(B), and we conclude that ORS 656.340(6) requires that the remuneration from those three jobs also provides the basis for determining claimant's eligibility for vocational assistance.
*72 SAIF contends that our interpretation is inconsistent with the director's interpretation of ORS 656.340 in the department's administrative rules.[5] Former OAR 436-120-0007(4) (Dec. 1, 2014) provides that, when the job at the time of injury is not seasonal or temporary, in determining the worker's weekly wage for purposes of determining the worker's eligibility for vocational assistance, the insurer must use the worker's wage "upon which temporary disability was based[.]" Claimant's job at the restaurant, although *201 part time, was not seasonal or temporary. Thus, for purposes of determining claimant's eligibility for vocational assistance, claimant's weekly wage was to be determined based on the wage "upon which temporary disability was based." Former OAR 436-120-0007(1)(g) provides, for purposes of determining eligibility for vocational assistance for a worker who is not seasonal or temporary, that "temporary disability" is "wage loss replacement for the job at injury." Former OAR 436-120-0007(1)(g).[6] Following that rule, the vocational assistance evaluator determined that claimant was ineligible for vocational assistance because she could be employed at a weekly wage within 20 percent of her $100.80 weekly wage at employer's restaurant, the job at injury.
Claimant contends that former OAR 436-120-0007 is inconsistent with the calculation required by ORS 656.340(6)(b)(B)(iii). Based on our interpretation of the definition of "regular employment" in ORS 656.340(5), we agree. Contrary to our interpretation of ORS 656.340 (6)(b)(B)(iii), the department's rule limits the basis on which to determine a worker's eligibility for vocational assistance to the wage at the job at the time of injury, even when the worker held multiple jobs. An administrative rule that is inconsistent with the provisions of a statute is invalid. Cook v. Workers' Compensation Department , 306 Or. 134, 144, 758 P.2d 854 (1988).
In support of its view that the director's interpretation is the correct one, SAIF refers us to legislative history from the 2011 legislative session, in which amendments to ORS 656.210 were adopted. Before 2001, an injured worker's benefits for temporary disability were to be calculated based *202 only on the wages paid at the job at injury, even if the worker had more than one job at the time of injury. See Bolton v. Oregonian Publishing Co. , 93 Or. App. 289, 761 P.2d 1354 (1988) (under then-existing statutes, employers could not "be required to pay greater benefits for temporary disability than the maximum benefits that would be due on the basis of wages that the claimant was receiving in their employ"). In 2001, the legislature enacted ORS 656.210 (2)(a)(B), requiring that temporary disability benefits be based on wages from all of the worker's subject employment, and not just the wages from the job at the time of injury. Or. Laws 2001, ch. 865, § 3. SAIF notes that the definition of "regular employment" in ORS 656.340(5) predates the 2001 amendments and contends that, necessarily, the definition did not contemplate multiple employments at the time of injury. But, as the Supreme Court and we have often said, subsequent legislative enactments do not aid in the interpretation of statutes. See, e.g. , *73 DeFazio v. WPPSS , 296 Or. 550, 561, 679 P.2d 1316 (1984) ("The views legislators have of existing law may shed light on a new enactment, but [are] of no weight in interpreting a law enacted by their predecessors."); SIF Energy, LLC v. Dept. of Energy , 275 Or. App. 809, 365 P.3d 664 (2015). We will not assume that "regular employment" as defined in ORS 656.340(5) meant only a worker's employment at the job at injury for purposes of eligibility for vocational assistance just because, before the enactment of ORS 656.210(2)(a)(B), temporary disability benefits were calculated based only on wages at the job at injury.
SAIF also cites testimony before legislative committees during the 2001 legislative session expressing the view that the changes to ORS 656.210 relating to the calculation of temporary disability were not to affect the eligibility determination for any other benefits, including vocational assistance. We have reviewed that legislative history, but it does not alter our interpretation of ORS 656.340(5). What the legislative history shows is that witnesses opined that the changes to ORS 656.210 relating to the calculation of temporary disability benefits would not affect eligibility for other benefits. But the testimony does not address ORS 656.340 or shed light on the eligibility requirements *203 for vocational assistance. Even if an inference can be drawn that the legislature intended that the eligibility criteria for vocational assistance would be the same as they had been, there is no indication in the legislative history that the legislature understood eligibility to depend only on the wage at the job at injury when a worker had multiple jobs. In any event, the text enacted by the legislature controls over any inconsistent intent expressed in the legislative testimony. Deluxe Cabinet Works v. Messmer , 140 Or. App. 548, 556, 915 P.2d 1053, rev den , 324 Or. 305, 925 P.2d 908 (1996). If and to the extent there is any inconsistency between the intent expressed by witnesses who testified in legislative hearings and the text as ultimately enacted, the text controls. We conclude that the legislative history does not alter our construction of the statutory text.
We conclude that ORS 656.340 requires consideration of all of claimant's employments in determining her eligibility for vocational assistance. The director's order is therefore reversed and remanded for reconsideration of claimant's eligibility for vocational assistance.
Reversed and remanded.

Under ORS 656.210(2)(c), when a worker is employed in more than one job at the time of injury, the injury is considered to be disabling only if "temporary disability benefits are payable for time lost from the job at injury."

ORS 656.210(2)(a)(B) provides that, for workers employed in more than one job at the time of injury, the worker's weekly wage "shall be ascertained *** by adding all earnings the worker was receiving from all subject employment." ORS 656.210(5) refers to temporary disability benefits paid for time lost from employment other than the employment at injury as "supplemental temporary disability benefits," and provides that, in accordance with rules adopted by the director, when a worker's weekly wage is determined under ORS 656.210(2)(a)(B), the insurer "shall be reimbursed from the Workers' Benefit Fund for the amount of temporary disability paid that exceeds the amount payable pursuant to subsection (2)(a)(A) of this section had the worker been employed in only one job at the time of injury." Because claimant was disabled from multiple employments at the time of her injury, claimant also received temporary disability benefits based on her wages at the other employments, described in the statute and administrative rules as "supplemental temporary disability benefits." ORS 656.210(6) provides that "[t]he director shall adopt rules for the payment and reimbursement of supplemental temporary disability benefits under this section." Under OAR 436-060-0035(1), a worker's "primary job" is "the job at which the injury occurred[.]" The worker's "secondary job" is "any other job held by the worker in Oregon subject employment at the time of injury." "Temporary disability" is defined by the director as "wage loss replacement for the primary job" and "wage loss replacement for the job at injury." The director's rule defines "supplemental disability" as "wage loss replacement for the secondary jobs that exceeds the temporary disability." Id.

"Regular employment" is similarly defined in OAR 436-120-0005(16).

After it determined that claimant did not qualify for vocational assistance, SAIF closed the claim with an award of permanent partial disability.

ORS 656.340(6)(b)(A) provides:
"The director shall adopt rules providing methods of calculating the weekly wage currently being paid for the worker's regular employment for use in determining eligibility and for providing assistance to eligible workers."
The department promulgated former OAR 436-120-0007 (Dec. 1, 2014) to meet that statutory obligation. Effective January 1, 2017, the rule has been renumbered OAR 436-120-0147. All references in this opinion are to former OAR 436-120-0007, applicable here.

Nonseasonal, nontemporary employment is the only context in which the department's rule requires that eligibility for vocational assistance be based only on the wages at the job at injury. When the request for vocational assistance arises in the context of an aggravation claim or when the job at the time of injury was temporary or seasonal, the director's rule requires consideration of the worker's multiple jobs in the calculation of the worker's weekly wage for purpose of determining eligibility for vocational assistance. Former OAR 436-120-0007(3) (for seasonal or temporary workers with multiple employers, the combined wages of all jobs are to be considered); former OAR 436-120-0007(5) (in the context of an aggravation claim, for workers with multiple employers, the combined wages of all jobs are to be considered). Thus, as applied by the department in its own rule, the definition of "regular employment" in ORS 656.340(5) is not limited to the single employment at the job at injury.